## ANTHONY TONY SNOWDEN *v.* STATE OF MARYLAND

[No. 188, September Term, 1976.]

*Decided November 10, 1976.*

The cause was argued before GILBERT, C. J., and MOYLAN and LOWE, JJ.

*Mark Colvin, Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *George E. Burns, Jr., Assistant Public Defender*, on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Edwin Wenck, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

John Morley's reflection that

"This means prepare the end, and the end is what the means have made it."

is especially applicable to criminal law. Frequently the law

serves only to define the means and limit the extent to which man may go in achieving an otherwise legitimate goal. Sexual relations, for example, are seldom simply illegal *vel non*; it is the means of achieving that end that distinguish it as rape, assault or a mutually pleasant experience. What is otherwise good and just, if it be sought by force or fraud, becomes bad and unjust.[1] Had Anthony Tony Snowden retained the subtleties of the mood provided by the psychedelic lights and stereo music in his apartment, he would not now be facing seven years imprisonment for having assaulted his young female companion who had accompanied him there to drink wine. Had he spoken seductively instead of shouting threateningly and caressed gently instead of disrobing roughly, she may not have reported it as rape. But she did, and the ensuing indictment for rape loomed so threateningly [2] that appellant agreed to a bargain with the State whereby he would plead guilty to assault in order to obviate the possibility of being convicted of the greater crime of rape.

The bargain offered him by the State became even more attractive when the prosecutor "agreed to recommend probation, coupled with psychiatric care" as the sentence. The bargain thus struck,[3] the plea was entered and

1. More prosaically, for those with a propensity for legal latin:

"Quod alias bonum et justum est, si per vim vel fraudem pretatur, malum et injustum efficitur."

2. The prosecutor stated to the court that:

"The defendant maintained to me throughout the incident, of course, that he did not commit the offense of assault on this young lady, but that he would plead guilty because of his fear of the possible sentence that he could receive if he were tried and convicted of the major offense, which was rape."

3. The plea bargain is described by colloquy between counsel and the court:

"MR. WENCK: Yes, there are, Your Honor. Through Mr. West, the Defendant's attorney, and myself representing the State, in consultation with the police officer in the case, the victim in this case and her father, we have agreed to accept an *Alford* plea and we have also agreed to recommend probation, coupled with psychiatric care.

THE COURT: Care?

MR. WEST: Not care, psychiatric treatment.

sentencing was deferred to obtain the presentence investigation and medical report ordered by the judge.

When that report was received, it suggested incarceration rather than probation.[4] Thus set aback, appellant's counsel argued strenuously and innovatively against the report, pleading with the court to accept the recommendations of the bargain and to order probation coupled with psychiatric treatment. At the conclusion of that plea, the court thanked him for his remarks and turned to the prosecutor saying:

> "Mr. Wenck, is the State adhering to the recommendation that it made at the time of the trial?"

We cannot speculate upon the judge's reason for asking such a question. However, to the prosecutor, who sat silently through appellant's counsel's persuasive attack upon the presentence recommendation, the invitation suggested by

---

MR. WENCK: Treatment, I was going to say amend and go on to say, Mr. West, on an out-patient basis, as would be deemed necessary.

. . .

THE COURT: As I understand the State's position, Mr. Wenck can correct me if I am wrong, is that the State is unequivocally recommending probation. That is Step No. 1.

MR. WEST: Right.

THE COURT: Step No. 2 is strictly a contingency step.

MR. WEST: Right.

THE COURT: That if it should be determined by competent judgment that as part of the probation, some type of out-patient psychiatric treatment would be appropriate, the State would ask for that too.

MR. WENCK: Yes, sir.

THE COURT: But if it doesn't determine it is necessary, the State would recommend probation.

MR. WENCK: Yes, sir, and I would exclude Patuxent.

THE COURT: That too, that is understood.

MR. WEST: And that is exactly my understanding. Thank you, Mr. Wenck."

4. Describing appellant as being an "antisocial personality in an aggressive person", Dr. Renate M. Kniffin explained in her report that he was a "... manipulative psychopath who apparently usually frequently succeeds in manipulating people to his own end." She noted that while he had average intelligence "... his reading and writing is not the best." She then recommended "that he be given a sentence which is commensorate with what the court has learned about the present offense."

the court's question was too suggestive to decline. Although he tried to avoid an obvious breach of the bargain, he sought to convey his message subtly by rehabilitating the report so astutely attacked by defense counsel:

"MR. WENCK: Yes, Your Honor, our word is our bond. Our yes is yes and our no our no. We stick by the recommendation. However, I feel constrained to, if I may, simply to point out for the record, that Mr. West, as always, a most eloquent advocate, and very skillfully, just as he was skillful in negotiating a plea on behalf of his client, I find him a formidable advocate every time I meet him at the trial table. But as I'm sure the Court is aware, assertion is not prove. [sic] I'm afraid that Mr. West's infallible style is seeking to poison the — well, suddenly he points out that it was a female psychiatrist, whether that was relevant at all, the sex of the doctor examining, the psychiatrist, I was not aware of any hysterial locating recently with regard to the subject of rape. As Mr. West's words, for the record, would seem to suggest, of course, there has been no supporting data to such an assertion, some of the same kind of conclusions that Mr. West draws with regard, or the guilty finger to which he points to the medical degree, or psychiatric residency, when he talks about the hostility and so on. And he made reference, one phrase that he used really set me off, was that the medical peoples' conclusions were subjective in nature. Well, psychiatry is as much an art as a science, and they are an informed, I would submit to the Court, subjectivity, based on years of medical knowledge and experience, and clinical training, and again, very skillfully, Mr. West has woven to his benefit — to his client's benefit, the best possible statement that one can make in the situation.

But for the record, I just thought it needed to be pointed out. I'm sure the Court is aware, in the

advocate's position, he is less than non-subjective himself in evaluating that which we have seen come back in the report.

THE COURT: With all of this, Mr. Wenck, is the State still adhering to its recommendation?

MR. WENCK: Yes, because of our agreement.

THE COURT: Is probation — with out-patient psychiatric treatment, is that your recommendation?

MR. WENCK: I believe we must, I believe we must.

THE COURT: All right."

Although the bargain, as understood by the court, was that "the State is unequivocally recommending probation", it is apparent that the prosecutor was urging the judge to comply with the presentence report rather than to adhere to his own "recommendations". Appellant contends that this violates the sanctity of a plea bargain as described in *Santobello v. New York*, 404 U. S. 257.

In *Miller v. State*, 272 Md. 249, 253, Judge Eldridge vividly described a similar prosecutorial equivocation as just such violation:

"When the prosecuting attorney said this, he was advising or suggesting to the judge that the conditional probation recommendation not be completely accepted. This constituted a 'recommendation' by the prosecuting attorney as to the 'disposition' of the case. Moreover, the prosecuting attorney certainly appeared to be recommending that imprisonment instead of conditional probation be imposed. Absent some further explanation by the prosecuting attorney, the only logical inference that could be drawn from his statement is that he was urging imprisonment rather than probation. The prosecutor's statement was inconsistent with his undertaking to make 'no recommendation.' "

The State had agreed to take affirmative action, *i.e.*, to

*recommend* probation, and it is apparent that such recommendation by the State was an inducement to obtain appellant's plea. *Santobello, supra,* 404 U. S. at 262; *United States v. Brown,* 500 F. 2d 375, 377. Despite the reluctant concession of conformity to the bargain at the conclusion of the prosecutor's apologia for the pretence recommendations, it is apparent that probation was the last thing he "recommended" to the court:

"I believe we must, I believe we must."

The appellant promptly moved to withdraw his guilty plea contending that the bargaining had been violated,[5] and with apparent good reason since, just before sentencing appellant to 7 years imprisonment, the judge himself acknowledged that the State's position had the appearance of something less than a recommendation of probation:

"... one could possibly read into what Mr. Wenck had to say, perhaps some reluctance that it had agreed to the arrangement which had been made, perhaps some feeling that although the

---

5.

"MR. WEST: Your Honor, I question whether Mr. Wenck's statement is consistent with his avowed intent to stand by his deal. It appears to me that he is saying, I must do it, I must do it, but I'd like to state what is wrong with Mr. West's case, with his approach to this case. In regard to the deal, I was approached by the prosecution and I was offered this deal. I made no confrontation with the prosecution. He approached me, and he laid this deal out to me, and I took it to my defendant. I did not suggest it, and did not initiate the contact, as I have in my notes. I feel that the State is saying that I have poisoned the well, with regard to the psychiatric interview, and that the psychiatric recommendation is correct, though his own recommendation, that he has in fact recommended probation in this case — I do not believe that the State is recommending probation with good faith in this case. And I do not believe it was a bona fide recommendation today, that he just made, when he says he must stand by the recommendation. In fact, I feel the State is withdrawing from its position in this case and I therefore move that the guilty plea be withdrawn and that this case be reinserted on the docket as a not guilty trial. I believe the State has reneged on its agreement in this case. And I don't think that the State is, in good faith, recommending this man be given probation. Therefore, I recommend, and I move that this Court withdraw the guilty plea and reinstate this case on the trial docket. Thank you."

State is recommending probation, it still might not be the best thing for all concerned."

Seemingly beguiled by appellate opinions lauding judicial superiority over mere laymen,[6] the judge pointed out that even if the bargain was breached, it had not affected his thinking because he had been predisposed to reject it anyhow:

"I want to make it very clear for the record that my disposition is going to be contrary to the recommendation of the State, and contrary to the recommendation of defense counsel. But, that my decision not to accept the recommendation of the State was made with finality before Mr. Wenck addressed the Court. It was made with finality at the conclusion of the defense presentation, here this morning, which consisted of forty minutes worth of argument by defense counsel and testimony by the defendant. That, at that stage, I firmly concluded that I would not follow the recommendation of the State or the defense counsel. It was strictly as a matter of format for the record that I asked the State whether it was adhering to the recommendation which it made at the time of trial. The additional comments by Mr. Wenck, I have already described, and they had absolutely no bearing whatever, on my determination, which had already been made, because I had already been aware of the recommendation of the State. I knew the State was bound by the recommendation, so I felt that I could make up my mind at the conclusion

6.
"'[J]udges are men of discernment . . . .' State v. Babb, 258 Md. 547, 550.

A judge presides impartially because of his 'professional expertise, experience and judicial temperament . . . .' State v. Hutchinson, 260 Md. 227, 233.

. . .

Judges have 'wisdom and experience.' Gunther v. State, 4 Md. App. 181, 184." See Williamson v. State, 25 Md. App. 338, 341.

of the defense presentation today. And that I need not really have to listen to any views to be expressed by the State, as I mentioned at the outset of the hearing, I read the medical evaluation and probation report prior to today, and have had many opportunities to reflect upon them. And I have reflected upon them, well prior to todays hearing, and my judgment is not in any way, shape or form, influenced by the additional comments which the State felt constrained to make this morning."

Such judicial adhesive cannot mend the prosecutor's broken promise. The Supreme Court anticipated this precise circumstance:

"We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Santobello v. New York,* 404 U. S. at 262-263.

It follows that the trial judge erred in denying appellant's motion to withdraw his guilty plea and proceed to trial as if there had been no bargain.

The prosecutor and the judge (and the appellant as well) might do well to contemplate a reflection of Publilius Syrus in the 1st Century B. C.:

"I have often regretted my speech, never my silence."

*Judgment reversed.*
*Case remanded for new trial.*
*Costs to be paid by Mayor and*
*City Council of Baltimore.*