## JEFFERY McCORMICK *v.* STATE OF MARYLAND

[No. 107, September Term, 1977.]

*Decided January 11, 1978.*

The cause was submitted on briefs to DAVIDSON, MELVIN and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Malloy, Assistant Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Stephen Rosenbaum, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ronald Owens, Assistant State's Attorney for Baltimore City,* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

In the Criminal Court of Baltimore, Jeffery McCormick, the appellant, tendered a plea of guilty to a charge of statutory rape. Judge Robert I. H. Hammerman accepted the plea. On 20 January 1976, he sentenced the appellant to a term of five years and, on his own initiative, ordered him to be examined at Patuxent Institution to ascertain if he was a defective delinquent. In this belated appeal, the appellant's sole contention is that the trial court erred in not giving him "an opportunity to withdraw his guilty plea."

The record shows that the appellant was indicted for rape (count one), assault with intent to rape (count two), statutory rape (count three), assault with intent to commit statutory rape (count four), and assault (count five). When the case was called for trial on 2 October 1975, the appellant took the stand and indicated that he wished to plead guilty to statutory rape. The State explained its position by stating:

> "MR. OWENS: The State's concern in this case is that the victim is a six year old girl, that the parents now feel that she has made at least recovery to some extent from the emotional trauma, that she is now doing well and unless compelled by some overwhelming event they would really not like to subject her to any emotional trauma. The State based on the information that we have received is that *there is a very strong indication for psychiatric treatment to bear.* This is a situation where we do not have strangers, in that the Defendant is the

step-brother of the mother of this child and *there is very strong feeling on the part of the State that the Defendant should be subjected to psychiatric treatment and —*

"THE COURT: *Treatment or evaluation?*

"MR. OWENS: *First evaluation and then treatment based on the evaluation. . . ."* (Emphasis added.)

The trial court ascertained from the appellant that he was 19 years old, that he could not read or write very well, that after the age of 13 he occasionally saw some psychologists, and that he had finished the eighth grade in special education classes. In response to questions from the court, the appellant stated that he understood the nature of the charge against him, that the maximum penalty which could be imposed was either a life sentence or, under certain circumstances, a sentence of 21 years,[1] that the minimum sentence would be 18 months, and that he could be referred to Patuxent Institution for evaluation as a possible defective delinquent. He further indicated that he understood his constitutional rights and that by pleading guilty he was giving them up. He stated that notwithstanding the fact that he was innocent, he was entering a guilty plea in order to avoid the possible consequences of going to trial. He affirmed that nobody had made him any promises or threats in order to obtain his plea.

Thereafter, the following colloquy took place:

"THE COURT: If there had been any plea negotiations and discussion in this matter, I would like the State to state them on the record at this time.

"MR. OWENS: Your Honor and if it pleases the Court, as part of the plea negotiations entered into by the State and both Defense counsel, the State has agreed to in fact proceed only on the third count of this indictment, that after due consideration to the

---

1. Carnal knowledge of child under fourteen or of insane, etc., woman, 1892 Md. Laws ch. 204 (repealed 1 July 1975, but applicable here because the alleged offense was committed on 25 March 1975).

young child, the victim in this case, the State does not wish to subject the child to any greater emotional trauma than she has already suffered, and in a search to do what is just in this case the State has, along with counsel, made it very clear to the Defendant the possible jeopardy that he faces. by pleading guilty in this instance. However, *the State has also agreed that it would recommend probation in this case, but only based upon the condition that it be compulsory that first of all there be a psychiatric evaluation by Dr. Rappeport or in fact other psychiatrists of the Supreme Bench, would be in fact recommended.*

"THE COURT: Would in fact be recommended or may be recommended?

"MR. OWENS: May be recommended." (Emphasis added.)

Defense counsel concurred "in this negotiation." Mrs. McCormick, the appellant's mother, testified that she agreed to the State's recommendation and approved of "what has been done." The victim's parents stated that the recommendation of the State was satisfactory to them. The appellant indicated that he understood everything that the trial court had explained and that he still wanted to plead guilty.

The court accepted the guilty plea and entered a verdict of guilty. The court ordered a pre-sentence investigation and medical examination.

On 18 November 1975, the trial court held a disposition hearing. The medical office's report, based solely upon appellant's records and not upon a personal interview, recommended that the appellant be referred to Patuxent Institution for evaluation as a possible defective delinquent. Both defense counsel and the State's attorney urged the trial court not to follow the recommendation. Immediately the ambiguity inherent in the plea agreement as described became apparent.

In an effort at clarification, defense counsel said that "as far as the negotiations were concerned, it was agreed, at least between the Defendant and counsel for the State, it was obviously a request for medical help and psychiatric help and psychotherapy." The State indicated that it had agreed to recommend "probation with a condition of compulsory psychiatric treatment," and that it was bound by that recommendation. Thereafter, the trial court indicated that, in its view, the State had not agreed to oppose the appellant's incarceration. In a subsequent effort at clarification, the State said that it

> "had no intent of seeking or recommending incarceration in this case. . . . [W]e did not by any stretch of the imagination dream that we were looking at a recommendation to Patuxent. . . . [T]he State has not been at any time trying to seek incarceration. . . . *I think the whole entire spirit of the . . . negotiations were aimed in the direction of not seeking incarceration, but really seeking some compulsory psychiatric treatment. . . .* I might also add that because of the age of the victim and because of the family relationship, I can't say it would have been unlikely, but it would have been a very difficult problem for the State to try this case." (Emphasis added.)

The trial court found that the State was "not seeking incarceration." It found that the State's position was that "if there was a recommendation of outpatient medical treatment they would support it, there was no such recommendation," and that "[t]he State still has not recommended incarceration. . . ." Imposition of sentence was postponed in order to permit the medical office to interview the appellant.

On 9 December 1975, another disposition hearing was held. The medical office, now having interviewed the appellant, again recommended that he be referred to Patuxent Institution for evaluation as a possible defective delinquent. Defense counsel explained that at the time the plea of guilty

was tendered, he understood the plea negotiations to be an offer by the State for "probation with psychiatric treatment in exchange for a plea of guilty" to statutory rape. The court did not agree, explaining its understanding of the plea bargain as follows:

> "The State's recommendation was that they wanted an evaluation by the Court Medical Office and that if the recommendation of the Court Medical Office would be outpatient treatment, then the State would want probation on the condition that the Defendant submit himself to compulsory treatment. In other words, the State was not pressing at that time for any prison sentence. . . . So, their recommendation was a qualified recommendation contingent on a certain recommendation of the Medical Office which was not forthcoming. . . ."

In a further effort at clarification, the State's attorney then present said:

> "*I think the spirit of the negotiations were with some kind of psychiatric treatment. . . .* [W]e were thinking in terms more along the lines of psychiatric setting that was not Patuxent oriented. We did not believe or did not understand, and I am not sure that I do believe at this point the Defendant to be what the State of Maryland calls a defective delinquent. . . .
>
> . . . .
>
> . . . [T]he best we could do was psychiatric care for this particular Defendant in an attempt to get him straightened out so that he would not continue. Now, that was the spirit of the negotiations." (Emphasis added.)

Finally, defense counsel stated that "had I known that there was any possible way he was going to be sent to Patuxent, which represents a possible life imprisonment, I would not have gone ahead. . . ."

Defense counsel moved for a "mistrial." The motion was denied. Because the trial court was persuaded that the medical office might have based its conclusions and recommendations on faulty data, disposition was again postponed to permit the medical office to reconsider its recommendation.

On 20 January 1976, a final disposition hearing was held. Defense counsel stated that he had informed the medical office of the inaccuracies in its report but "they did not find it amiable to change anything." In a final effort at clarification of its position, the State's attorney said:

> *"[T]he State has not changed its position as originally stated to the Court, that is the Defendant in our opinion should be placed on probation and that also the Defendant should have the benefit of a community-based psychiatric program, and we have not changed our position in respect to disposition in this case.*
>
> "THE COURT: I think you are changing your position, Mr. Owens, because I do not believe that was part of the plea negotiations.
>
> "MR. OWENS: ". . . What I was trying to convey to the Court is that after having consulted extensively with all of the members of the family *there is still a strong belief on the part of the State . . . that the Defendant should in fact get a suspended sentence. In fact, there should be a community-based type psychiatric program. . . . I do not believe incarceration would solve the problem.* I do not believe placing him in prison is the answer to the problem. . . ." (Emphasis added.)

Thereafter, the trial court sentenced the appellant to a term of five years and referred him to Patuxent Institution for evaluation as a possible defective delinquent.

Maryland Rule 722, in effect at the time of appellant's sentencing,[2] provided:

---

2. Repealed 1 July 1977. *See* Maryland Rule 733.

> "The court may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice."

Whether to strike a plea was a matter within the trial court's discretion.[3] Thus the question here is whether the trial court abused its discretion by failing to strike appellant's guilty plea.

Some courts have long recognized that when a trial court imposes a sentence other than that recommended by a prosecutor pursuant to a plea agreement, it is an abuse of discretion to fail to permit the accused to withdraw his guilty plea. For example, in *Griffin v. State*,[4] the trial court was informed that a plea agreement provided that the defendants would plead guilty with the understanding that a misdemeanor punishment would be imposed. The prosecutors thereafter assured defense counsel that a fine and not imprisonment would be imposed. The trial court imposed a sentence of five years. The defendants moved to withdraw their guilty pleas, claiming that they had been induced by the assurance of the prosecutors that the trial court would impose a fine. The motion was denied. The Court of Appeals of Georgia reversed, holding that the trial court had abused its discretion in denying the motion. That Court said:[5]

> "Of course, neither the solicitor general nor any other counsel has authority to bind the court in the matter of the punishment to be imposed. Indeed, an extrajudicial agreement by the judge himself would not bind him. Notwithstanding such a promise, he might impose a different penalty, and his action in this respect could not be controlled. But if such a promise should be made by the judge to induce a plea of guilty, and after the plea was entered the promise should be violated, no one would contend that the

---

**3.** Palacorolle v. State, 239 Md. 416, 420, 211 A. 2d 828, 830 (1965); Watson v. State, 17 Md. App. 263, 267-68, 301 A. 2d 26, 28, *cert. denied,* 268 Md. 754 (1973).
**4.** 77 S. E. 1080 (Ga. App. 1913).
**5.** 77 S. E. at 1085.

prisoner ought not to be allowed to withdraw his plea and have a trial. This would be so, not so much because the judge has broken a promise which he had no right to make, but because the prisoner has been misled to his injury, and has been induced to make a confession by a hope of reward. Now, what difference can it make if the hope of reward is engendered by a promise of the state's attorney rather than of the judge? The solicitor is the state's representative; his advice and recommendation are generally followed by the court. Ordinarily a motion to nolle pros. made by him is granted, and so is his advice generally accepted that a plea of guilty be received with a recommendation for a misdemeanor punishment. Prosecuting attorneys are usually able and conscientious public officers, having to a marked degree the confidence of the public and of their professional associates. Well-nigh any attorney representing one accused of crime would unhesitatingly accept an assurance from the solicitor general that if a plea of guilty with a recommendation would be entered the recommendation would be respected by the court. It is very reprehensible for counsel for a person accused of crime to seek to have the judge commit himself in advance in reference to the punishment to be imposed, and it is even more reprehensible for the judge to so commit himself. And while the practice of endeavoring, in advance of a plea of guilty, to obtain through the state's attorney a promise from the court in reference to the penalty to be imposed is not to be commended, yet if it be done, and the prisoner and his counsel be thus misled, who shall say that the confession may not be withdrawn? The situation is exactly the same, so far as the prisoner is concerned, if he be misled, not by

a promise made by the court, but by an assurance from the prosecuting attorney...." [6]

In 1971 a related question was considered by the United States Supreme Court in *Santobello v. New York.*[7] There the prosecution, having agreed to make no sentence recommendation, recommended the maximum penalty. The court, in vacating the judgment, said: [8]

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled....*

. . .

"... [W]e conclude that *the interests of justice* and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration [of appropriate relief]." (Emphasis added.)

The same principles have been enunciated in Maryland.[9]

Subsequently, other federal and state courts, relying on *Santobello,* have determined that where a judge imposes a

---

6. *See also,* People v. Walker, 95 N. E. 475, 477 (Ill. 1915); East v. State, 168 N. E. 28, 29-30 (Ct. App. Ind. 1929); State v. Cochran, 60 S.W.2d 1, 2-3 (Mo. 1933); State v. McAllister, 30 P. 2d 821, 823-24 (Mont. 1934); Longenbaugh v. State, 288 P. 611, 612 (Okla. Crim. App. 1930); State v. Walters, 204 N. W. 171, 172 (S.D. 1925).

7. 404 U. S. 257, 92 S. Ct. 495 (1971).

8. 404 U. S. at 262-63, 92 S. Ct. at 499.

9. State v. Brockman, 277 Md. 687, 694, 357 A. 2d 376, 381 (1976); Miller v. State, 272 Md. 249, 252-55, 322 A. 2d 527, 529-30 (1974); Snowden v. State, 33 Md. App. 659, 663-64, 666, 365 A. 2d 321, 323-25 (1976); Wynn v. State, 22 Md. App. 165, 170-71, 322 A. 2d 564, 567 (1974).

sentence other than that recommended by a prosecutor pursuant to a plea agreement, the accused should be permitted to withdraw his guilty plea. In *United States ex rel. Culbreath v. Rundle,*[10] a prosecutor told a judge that he had advised the accused that a maximum sentence of two years would be imposed. The accused stated that no one had promised him that a particular sentence would be imposed. After the plea was accepted but before sentencing, the accused moved to withdraw his plea, alleging that it had been entered because he believed that the trial court would impose the recommended sentence. The request was denied and the accused was sentenced to six to 12 years. Relying squarely upon *Santobello,* the Court of Appeals reversed. Referring to the prosecutor's promises which were made known to the trial judge, the court said: [11]

> "This understanding cannot commit or bind the sentencing judge to any particular sentence.... However, if the judge ultimately determines that the interest of justice would not be served by accepting the Government's recommendation made pursuant to such agreement the defendant should be permitted to withdraw his guilty plea, particularly where, as here, there is no Government claim of prejudice or harm." (Footnote omitted.)

In *Commonwealth v. Barrett,*[12] the Superior Court of Pennsylvania held that the accused should have been permitted to withdraw his guilty plea after the trial judge imposed a more severe sentence than that recommended by the prosecutor under the plea agreement even though the trial judge previously had advised the accused that he could receive a more severe sentence. There the court, relying upon *Santobello,* emphasized that where a promise or agreement of the prosecutor is part of the inducement or consideration for the guilty plea, the accused must be allowed to withdraw

---

10. 466 F. 2d 730 (3rd Cir. 1972).
11. 466 F. 2d at 735.
12. 299 A. 2d 30 (Pa. Super. Ct. 1972).

the plea if he does not receive the contemplated benefit. Because the accused had not received the benefit of his bargain, the court ordered that the appellant's conviction be reversed and that he be allowed to withdraw his guilty plea and go to trial.

Similarly in *Kurlin v. State*,[13] the Florida District Court of Appeal held that the accused should be allowed to withdraw his plea if the trial court does not impose the sentence contained in the plea bargain. There the trial court initially informed the accused that it would, in accordance with a plea agreement, impose a two year sentence. Subsequently he was sentenced to a three year term. The court held that the sentence should be reduced to a two year term, stating that it reached this conclusion in order to

> "assure that defendants are not induced to enter a plea of guilty based upon a representation that a particular sentence will be imposed, later being subjected to a harsher or more lengthy sentence. It is important that citizens, including those accused of crimes, have confidence in their government, particularly the judicial branch." [14]

These cases establish that if an accused does not receive the contemplated benefit which was part of the inducement for a guilty plea, he should be permitted to withdraw the guilty plea.[15] This principle rests upon considerations of fairness.[16] The acceptance of a guilty plea "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." [17]

The adoption by the American Bar Association of Standards Relating to the Function of the Trial Judge [18]

13. 302 So. 2d 147 (Fla. Dt. Ct. App. 1974).
14. 302 So. 2d at 150.
15. *See also*, Miller v. State, 272 Md. 249, 255, 322 A. 2d 527, 530 (1974); Snowden v. State, 33 Md. App. 659, 663-66, 365 A. 2d 321, 323-25 (1976).
16. State v. Brockman, 277 Md. 687, 698-99, 357 A. 2d 376, 382-84 (1976); Wynn v. State, 22 Md. App. 165, 171, 322 A. 2d 564, 567 (1974).
17. Santobello v. New York, 404 U. S. 257, 262, 92 S. Ct. 495, 499 (1971).
18. ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge (Approved Draft, 1972).

further demonstrates the widespread acceptance of the concept that fairness requires that an accused be permitted to withdraw his plea if he does not receive the contemplated benefit of his plea bargain. Standard 4.1 "Role of the judge in plea discussions and plea agreements" provides in pertinent part: [19]

> "(c) *If the plea agreement contemplates the granting of* charge or *sentence concessions by the trial judge, he should:*
>
> > "(i) unless he then and there grants such concessions, inform the defendant as to the role of the judge with respect to such agreements, as provided in the following subparagraphs;
> >
> > "(ii) give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence concessions; and
> >
> > "(iii) *permit withdrawal of the plea* (or, if it has not yet been accepted, withdrawal of the tender of the plea) *in any case in which the judge determines not to grant the charge or sentence concessions contemplated by the agreement.*" (Emphasis added.)

The Commentary provides in pertinent part: [20]

> "Subsection (c) deals with the obligation of the trial judge with respect to plea agreements which require his concurrence if a disposition contemplated by the agreement is to be effected. Such agreements include those in which the prosecutor agrees not to oppose, as well as to make, favorable recommendations as to the sentence, and agrees not to oppose, as well as to seek, reduction or dismissal of charges. . . .

. . .

19. *Id.* at 51-52.
20. *Id.* at 54-57.

"*Subparagraph (iii).* The second significant principle is expressed in subparagraph (iii). In effect it is that in *any* case in which a plea agreement contemplates concurrence by the trial judge and he decides not to concur, the defendant should be so informed and given the option of going to trial. . . .

". . . [T]he requirement that the judge permit withdrawal of the plea if he decides not to concur in the contemplated disposition was incorporated in . . . 3.3(b) of [ABA Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968)]. That standard permits the judge to give an indication in advance of tender of the plea that he will go along with the agreement if the relevant representations to him are confirmed by the presentence report. . . . *It was ultimately concluded that fair treatment of the defendant,* as well as the correctional problems resulting from the defendant's belief otherwise that he had been treated unfairly, *mandated giving him the opportunity to withdraw his plea if the judge later changes his mind.* . . .

"For similar reasons, the standard recommended here by the Advisory Committee on the Judge's Function (with the encouragement and concurrence of the Special Committee) mandates giving the defendant the opportunity to withdraw his plea whether or not the judge chooses to give advance notice as to his concurrence in the agreement. Experience in those courts which recognize plea discussions and plea agreements as an appropriate part of the administration of criminal justice — experience in large measure generated by the Pleas of Guilty report — indicates that *there is little difference, from the viewpoint of fair treatment, between cases where the judge gives advance notice of concurrence and those where he only follows the standards of requiring disclosure of the agreements*

*and giving them due consideration. Even though the judge has said nothing to the defendant in the latter situation except that he need not follow the prosecutor's recommendations, there nevertheless remains at least the taint of false inducement."* (Emphasis added.) [21]

Courts in some jurisdictions, relying on these standards, have held that an accused should be permitted to withdraw his guilty plea when a trial court fails to honor the plea agreement.[22] Courts in other jurisdictions have reached the same result by applying court rules or statutes consonant with the ABA Standards.[23]

Maryland has recognized that considerations of fairness require that an accused be permitted to withdraw his guilty plea if the trial judge fails to accord him the contemplated benefit of a plea bargain. Maryland Rule 733, effective 1 July 1977, subsequent to the sentencing of appellant, provides in pertinent part:

"§ b.4. Rejection of Plea Agreement.

"If the judge rejects the plea agreement, he shall inform the parties of this fact and shall advise the

---

21. There is no merit in the State's contention that the ABA Standards require a trial judge to offer an opportunity to withdraw a guilty plea only if the judge has previously advised the accused that he concurred in the recommendation or has failed to advise the accused of anything other than that the recommendation is not binding. The 1972 Standards Relating to the Function of the Trial Judge are an amplification of the 1968 Standards Relating to Pleas of Guilty, and are substantially different. The 1972 Standards provide that the trial judge should permit withdrawal of the plea in any case in which he determines not to grant the sentence concessions contemplated by the agreement. Standard 4.1(c)(iii). Thus even a trial judge who advises the accused regarding the possible consequences of his guilty plea should allow the accused to withdraw that plea when he does not grant the contemplated sentence concessions.

20. *See, e.g.,* Quintana v. Robinson, 319 A. 2d 515, 518-19 (Conn. Sup. 1973); State v. Fisher, 223 N.W.2d 243, 246 (Iowa 1974). *But see contra,* People v. Fratianno, 85 Cal. Rptr. 755, 756-62 (Ct. App. 1972); State v. Parrish, 232 N.W.2d 511, 515 (Iowa 1975); State v. Ramos, 512 P. 2d 1274, 1276 (N.M. Ct. App. 1973).

23. *See, e.g.,* People v. Ramos, 102 Cal. Rptr. 502, 504 (Ct. App. 1972); Commonwealth v. Sutherland, 340 A. 2d 582, 583-84 (Pa. Super. Ct. 1975). *See also,* Fed. Rules Cr. Proc. rule 11, 18 U.S.C.A. (1975); Ill. Sup. Ct. Rule 402 (1970); Pa. R. Crim. P. 319 (1972). *But see,* United States v. Futeral, 539 F. 2d 329, 331 (4th Cir. 1975).

defendant: that the court is not bound by the plea agreement; that the defendant may withdraw his plea; and that if the defendant persists in his plea of guilty or *nolo contendere* the sentence or other disposition of the case may be less favorable to him than the plea agreement. If the defendant persists in his plea, the court may accept the plea of guilty only pursuant to section c of Rule 731 (Pleas) and a plea of *nolo contendere* only pursuant to section d of Rule 731 (Pleas)."

The adoption of Maryland Rule 733 necessarily indicates that the "interest of justice," referred to in former Maryland Rule 722, required that the accused be afforded safeguards against the possibility that the contemplated benefit which induced the guilty plea would not be accorded. Maryland Rule 733, the ABA Standards, and the preceding cases all support the conclusion that a trial court abuses its discretion if it fails to permit withdrawal of a guilty plea when the contemplated benefit which induced the plea is not accorded.

Here the parties submitted a plea agreement proposing a particular sentence. Because the terms of that agreement, as originally stated, were ambiguous, the intent of the parties at the time it was made controls its interpretation.[24] The intent of the parties at that time is clear.

Defense counsel maintained throughout that appellant pled guilty to statutory rape in order to prevent his incarceration and to insure a sentence of probation with psychiatric care. In fact, defense counsel said that had he known there was any possibility that appellant would be imprisoned and referred to Patuxent, he would not have advised the appellant to plead guilty. The State's attorney initially explained that the medical office's function was to make an evaluation of the appellant including a recommendation which would serve as a basis for an appropriate course of therapy. He repeatedly stated that the "spirit of the negotiation" was to assure all

---

24. Canaras v. Lift Truck Services, Inc., 272 Md. 337, 352, 322 A. 2d 866; 874 (1974); Hardy v. Brookhart, 259 Md. 317, 326-27, 270 A. 2d 119, 125 (1970); Foodmaker, Inc. v. Denny, 32 Md. App. 350, 356, 360 A. 2d 446, 450, *cert. denied,* 278 Md. 720 (1976).

of those concerned that the appellant would not be incarcerated, but would be placed on probation and provided with psychiatric care. He consistently opposed incarceration. He concluded by saying that there was "still a strong belief on the part of the State" that the appellant should receive a suspended sentence, that he should not be imprisoned, and that he should be placed in a community-based psychiatric program. These statements establish that the parties intended and did in fact agree that the appellant would plead guilty to statutory rape in exchange for a sentence of probation with compulsory psychiatric treatment.

Here, because the guilty plea rested in significant degree on an agreement which contemplated that a particular sentence would be imposed, the accused was entitled to withdraw that plea if he did not receive the contemplated benefit.[25] When the tial court imposed a sentence of imprisonment with referral to Patuxent, the accused did not receive the contemplated benefit of a sentence of probation with compulsory psychiatric treatment. That the trial court had informed the appellant that it could impose a maximum sentence of life imprisonment, or a sentence for a term of years not to exceed 21 years,[26] that the minimum sentence was 18 months, that it could refer him to Patuxent Institution for examination,[27] and that the State's attorney had fulfilled his obligations under the plea agreement, did not alter the fact that the accused did not receive the contemplated benefit which induced his plea. When defense counsel moved for a mistrial, he in effect requested withdrawal of the plea.

25. Santobello v. New York, 404 U. S. 257, 262, 92 S. Ct. 495, 499 (1971); United States ex rel. Culbreath v. Rundle, 466 F. 2d 730, 735 (3rd Cir. 1972); People v. Ramos, 102 Cal. Rptr. 502, 504 (Ct. App. 1972); Quintana v. Robinson, 319 A. 2d 515, 517 (Conn. Sup. 1973); Kurlin v. State, 302 So. 2d 147, 150 (Fla. Dt. Ct. App. 1974); State v. Fisher, 223 N.W.2d 243, 246 (Iowa 1974); Commonwealth v. Sutherland, 340 A. 2d 582, 584 (Pa. Super. Ct. 1975); Commonwealth v. Barrett, 299 A. 2d 30, 32 (Pa. Super. Ct. 1972).

26. See n. 1, above.

27. See United States v. Hammerman, 528 F. 2d 326, 330 (4th Cir. 1975); Commonwealth v. Sutherland, 340 A. 2d 582, 583 (Pa. Super. Ct. 1975); Commonwealth v. Barrett, 299 A. 2d 30, 30-32 (Pa. Super. Ct. 1972); ABA Standards Relating to the Function of the Trial Judge, Standard 4.2(a)(iv) (Approved Draft, 1972); Fed. Rules Cr. Proc. rule 11(c) & (e). But see United States v. Futeral, 539 F. 2d 329, 330-31 (4th Cir. 1975); People v. Fratianno, 85 Cal. Rptr. 755, 760 (Ct. App. 1970).

Considerations of fairness required the trial court to permit the requested withdrawal. Under the present circumstances, the trial court's failure to permit withdrawal was an abuse of discretion. Accordingly, the judgment shall be vacated and the case remanded for the purpose of allowing the appellant to elect whether to withdraw the guilty plea or to be resentenced by a different judge.[28]

> *Judgment vacated.*
> *Case remanded for proceedings consistent with this opinion.*
> *Costs to be paid by Mayor and City Council of Baltimore.*

---

**28.** State v. Brockman, 277 Md. 687, 700, 357 A. 2d 376, 384 (1976); Miller v. State, 272 Md. 249, 255-56, 322 A. 2d 527, 530-31 (1974). *See* Sturgis v. State, 25 Md. App. 628, 637, 336 A. 2d 803, 807-08 (1975); Maryland Rule 733 a. 6. & b. 1-5.