UNITED STATES of America ex rel. Wallace CULBREATH, Appellant,

v.

Alfred T. RUNDLE.

No. 71–1750.

United States Court of Appeals, Third Circuit.

Argued May 4, 1972.

Decided Sept. 5, 1972.

court specifically found that the trial court had not abused its discretion. The United States District Court, 320 F. Supp. 1052, held that "upon review of the state court record, this court agrees."

Wallace Culbreath was indicted for the crimes of murder (No. 399), violation of the Uniform Firearms Act (No. 400) and voluntary manslaughter (No. 401). The indictments arose out of the death, caused by gun shot wound, of Ernest McNeill on July 1, 1968 in the City of Chester, Pennsylvania.

On January 13, 1969 appellant's case was called for trial. Court appointed counsel, Mr. I. B. Sinclair, the defendant and the Assistant Prosecutor were present in court, and defendant Culbreath entered a plea of not guilty to indictment No. 399, charging murder.

When a conference was requested, the judge inquired as to the need for Culbreath's presence and was advised by Mr. Sinclair that it would not be necessary for his client to attend. There then followed a conference between the Assistant District Attorney and defense counsel in chambers and in the presence of the trial judge. When the conference was concluded and the attorneys returned to the courtroom, the Assistant District Attorney stated in open court that he had been advised by counsel for the defendant that Culbreath wished to change his plea and enter a plea of guilty to the murder indictment. Thereafter, there was an extensive inquiry examination of the defendant, first by Mr. Sinclair and then by the trial judge, for the purpose of determining whether or not the plea of guilty was voluntarily, knowingly and intelligently made. The trial judge being satisfied that the defendant had been properly advised of his rights and made aware of the consequences of a guilty plea, Culbreath was permitted to change his plea to the murder indictment from not guilty to guilty. Specifically, Culbreath stated that there

I. B. Sinclair, Bell, Harvey, Pugh & Sinclair, Media, Pa., for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Media, Pa., for appellee.

Before VAN DUSEN, GIBBONS, and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

This is an appeal from the denial of a writ of habeas corpus. The issue before us is whether a state trial judge erred in refusing to permit Culbreath to withdraw his plea of guilty to a murder indictment prior to the imposition of sentence.

The Pennsylvania Supreme Court held that an application for leave to withdraw a plea of guilty is a matter of judicial discretion and it will not be reversed in the absence of a clear abuse of discretion or an error of law which controlled the lower court's decision.[1] That

---

1. Commonwealth v. Culbreath, 439 Pa. 21, 264 A.2d 643 (1970). Justice Roberts filed a dissenting opinion joined by Justice Pomeroy.

were no promises made to him either by the District Attorney, counsel, or anyone else as to what the sentence would be.

Evidence was then taken concerning appellant's degree of guilt,[2] after which Mr. Carey, Assistant District Attorney, addressed the court

> "[A]s to any consideration of sentence, * * * I would say, having gone into this case * * * and freely discussed it at great length yesterday even on the telephone with Mr. Sinclair * * *, I told him yesterday that I would make the statement to the Court that * * * it is my understanding the sentence at Broadmeadows would be a maximum of two years. * * *"

The colloquy between the judge and Mr. Carey continued as follows:

> THE COURT: Are you suggesting a two-year penalty? Is that what you are suggesting?
>
> MR. CAREY: I am so indicating to the Court, yes sir.
>
> THE COURT: Under these facts?
>
> MR. CAREY: Yes sir.
>
> THE COURT: Do you know that under this evidence, the Jury could have found him guilty of Murder in the First Degree?
>
> MR. CAREY: The Jury, I would say, could have and with this testimony, I think I would have been most reluctant to go the Jury and argue First Degree.

At the conclusion of the hearing the judge found appellant guilty of murder in the second degree. The court deferred the imposition of sentence and ordered a presentence investigation.

On April 8, 1969 Culbreath filed a petition for leave to withdraw his guilty plea alleging that his plea was entered on a belief that he would only receive a sentence of two years. A hearing on the petition for leave to withdraw the plea of guilty was held on June 12, 1969. In his July 29, 1969 opinion and order, the trial judge dismissed the petition and entered an order directing appellant to appear for sentence. On August 20, 1969 Culbreath was sentenced to imprisonment for a term of six to twelve years. The judgment of sentence was affirmed by the Supreme Court of Pennsylvania.

In July 1970, defendant filed a petition for a writ of habeas corpus. The district court, as previously noted, denied relief to Culbreath. This court granted Culbreath's application for a certificate of probable cause and leave to docket out of time on August 18, 1971.

■ It has been recognized under Pennsylvania and Federal law that a trial judge has discretion to refuse a request to retract a plea of guilty since there is no absolute right to withdraw such plea.[3] However, a request made before sentencing has been generally construed liberally in favor of the accused.[4]

---

2. Under Pennsylvania law when an accused pleads guilty to a murder indictment a degree of guilt hearing is held. Pa.Stat. Ann. tit. 18, § 4701 (1963); Commonwealth v. Jones, 355 Pa. 522, 50 A.2d 317 (1947); United States ex rel. Rivers v. Myers, 384 F.2d 737, 743 (3d Cir. 1967). See Pa. Rules of Criminal Procedure, Rule 1115, Appendix-Title 19, eff. August 1, 1968.

3. Commonwealth v. Scoleri, 415 Pa. 218, 202 A.2d 521, 203 A.2d 319 (1964); Commonwealth v. Culbreath, supra; United States v. Stayton, 408 F.2d 559 (3d Cir. 1969); United States v. Young, 424 F.2d 1276 (3d Cir. 1970).

4. The principle that the withdrawal of a guilty plea before sentence is imposed should be "freely allowed," *Stayton*, supra, is underscored and succinctly summarized by Judge Adams in *Young*. "The liberal rule for withdrawal of a guilty plea before sentence is consistent with the efficient administration of criminal justice. It reduces the number of appeals contesting the 'knowing and voluntariness' of a guilty plea, and avoids the difficulties of disentangling such claims. It also ensures that a defendant is not denied a right to trial by jury unless he clearly waives it." p. 1279. See ABA Project on Minimum Standards from Criminal Justice, "Standards Relating to Pleas of Guilty," (Ap-

Indeed, the state trial judge did question Culbreath as to the voluntariness of his guilty plea which elicited a denial that *any* promise had induced his plea. But here we have a record which supports the claim that the guilty plea was induced through a "plea bargaining" process. After the guilt hearing defendant immediately began to question the firmness of the agreement; he instructed his attorney before sentence to retract his guilty plea. Defendant's position is not based on conclusory statements, conjecture or speculation. His contention that Mr. Sinclair advised him that the plea bargain would likely be accepted by the court is substantiated by the record.[5]

That there was an understanding predicated upon a plea bargain between the Assistant District Attorney and Culbreath's attorney is beyond peradventure. The "bargain" was disclosed in open court at the change of plea hearing and was reiterated at the oral argument in support of defendant's application to withdraw his guilty plea.[6] The state

trial judge, in his written opinion, observed that "it is clear that there is no legal justification for the withdrawal of a plea of guilty which is entered under the belief that as the result of such plea, the defendant will receive a sentence of imprisonment agreed upon by the attorney for the defendant and the Assistant District Attorney;" and, "it appears that the purpose of this petition is to obtain a retrial with the hope that the defendant would find a judge who would approve of the recommendation made by counsel and the Assistant District Attorney." The judge believed that after every precaution was taken by him to fully explain to Culbreath the significance of accepting a guilty plea that to permit a withdrawal of that plea would "make a mockery of the Court and the law" and "would lend encouragement to every defendant to file a Petition to withdraw his plea of guilty whenever the Court refused to adopt the recommendation of his attorney and the District Attorney."

Subsequent to the judicial determinations in the instant case the United

proved Draft 1968) at pp. 61–62 as supplemented (March 1968). Justice Roberts, in *Culbreath* commented as follows: "I begin by noting that this Court has never articulated the important distinction between pre-sentence and post-sentence plea withdrawals." 264 A.2d p. 647. See Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963).

5. MR. SINCLAIR: "Now, I explained to Mr. Culbreath as best I could that—of course since your Honor had not participated in this discussion you would not be bound by it, but here's where I think I got into difficulty. As I have talked with him later, he was under the impression that were Mr. Carey and I both to recommend the minimum of two years to your Honor that you would accept it. And this is the problem." Tr. June 12, 1969 p. 4. * * *
MR. SINCLAIR: "Well, have I before the Court now indicated to the Court accurately that you do feel that you were misled by what I told you?
THE DEFENDANT: Yes.
MR. SINCLAIR: Now, the second thing is, I want to know whether you want me, under all the circumstances, to continue as your attorney?

THE DEFENDANT: I do.
MR. SINCLAIR: I feel that's important to be on the record because I do feel a responsibility here to Mr. Culbreath and to the Court for creating this situation where he was misled." Tr. June 12, 1969 p. 9.

6. The majority opinion in Commonwealth v. Culbreath, supra confirms the plea bargaining in these words. "At the time of the sentence, the assistant district attorney did make the recommendation for a maximum sentence of two years." However, the record discloses that this recommendation was made prior to the time of sentence. The dissenting opinion aptly describes Culbreath's predicament in this fashion: "He first believed that the judge had agreed to a plea bargain for a two year sentence, but later realized that the judge was not informed of, and did not concur in, the bargain. This erroneous impression was conveyed to him by the fact that the trial judge met with counsel in chambers before he withdrew his plea of not guilty, by the assistant district attorney's recommendation of two years at the degree of guilt hearing, and by the representations of defense counsel."

States Supreme Court decided Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Recognizing the dynamics of the modern criminal justice system and the need to scrutinize the methods used to obtain pleas, the court discusses and encourages the role of plea bargaining.

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned." pp. 260–261, 92 S.Ct. pp. 498.

Santobello involved an appeal from state court action denying petitioner the right to withdraw his guilty plea prior to sentence. The majority opinion is grounded upon the basic concept of fundamental fairness, while the concurring opinions focus on the constitutional implications of plea bargaining. A guilty plea is a "serious and sobering occasion inasmuch as it constitutes a waiver of fundamental constitutional rights." Santobello, (Mr. Justice Douglas, pp. 264–265, 92 S.Ct. p. 500). Mr. Justice Marshall noted that a guilty plea is not "lightly presumed" and in fact is viewed with the utmost "solicitude," p. 267, 92 S.Ct. 495.[7] Santobello teaches us that a defendant's "no promises" declaration when he pleads guilty pursuant to "plea bargaining" is not inviolable.[8] We agree that an "[E]xamination of the defendant alone will not always bring out into the open a promise that has induced his guilty plea. It is well known that a defendant will sometimes deny the existence of a bargain that has in fact occurred, * * * out of fear that a truthful response would jeopardize the bargain." Walters v. Harris, 460 F.2d 988, 993 (4th Cir. 1972). It is within the sound discretion of the sentencing judge to determine whether the interest of justice will be served by accepting the prosecutor's recommendation. However, "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." 404 U.S. p. 262, 92 S.Ct. p. 499.[9] There can be no misinterpreta-

---

7. See Mr. Justice Stewart's concurring opinion in Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45.

8. "Trial judges, although they are aware that negotiation for pleas is a common practice, routinely ask the defendant whether any promises have been made to him. Notwithstanding the fact that the plea has been the subject of negotiation, the defendant usually answers in the negative, and the prosecutor and defense counsel seldom indicate to the contrary." ABA Project on Minimum Standards For Criminal Justice (1968) p. 61. The commen-

tary continues with a quote from Trebach, The Rationing of Justice 159–60 (1964):
"If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel, . . . ' [the defendant] would no more challenge that statement in open court than he would challenge a clergyman's sermon from the pulpit."

9. Cf. Moorhead v. United States, 456 F.2d 992 (3d Cir. 1972).

tion of the following language from *Santobello*:

> "[A] constant factor [in the disposition of charges after the plea discussions] is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." p. 262, 92 S.Ct. p. 499.

There is nothing inherently wrong in honest plea bargaining. In our case the Assistant District Attorney and defendant's counsel negotiated a plea bargain. Defendant was to change his not guilty to a guilty plea to the murder indictment. The Government would recommend to the court that Culbreath receive a two year sentence at Broadmeadows and after imposition of sentence the remaining indictments would be dismissed. The "essence of those promises" was made known to the trial judge. *Santobello*, 404 U.S. pp. 261–262, 92 S.Ct. 495, 30 L.Ed.2d 427. This understanding cannot commit or bind the sentencing judge to any particular sentence. There is no absolute right to have a guilty plea accepted. However, if the judge ultimately determines that the interest of justice would not be served by accepting the Government's recommendation made pursuant to such agreement the defendant should be permitted to withdraw his guilty plea, particularly where, as here, there is no Government claim of prejudice or harm.[10]

It is unfortunate that after a member of the District Attorney's office openly and frankly urged the trial court to accept the plea bargain, another Assistant from the same office takes the position in the Supreme Court of Pennsylvania, the District Court and on this appeal that the sentence imposed by the trial judge was proper and "backs away" from the original agreement or "bargain." We call attention to the statement of Mr. Chief Justice Burger in *Santobello*. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." p. 262, 92 S.Ct. p. 499. This concept of responsibility is reiterated in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) where the court described the Prosecutor's office as "an entity and * * * spokesman for the Government."

*Santobello* mandates a reversal of the district court's order denying Culbreath's petition for a habeas.

The order of the district court denying the writ of habeas corpus will be reversed. The case is remanded to the district court to issue a writ of habeas corpus within sixty days from the order of mandate unless the Commonwealth of Pennsylvania agrees (1) to give Culbreath an opportunity to withdraw his plea of guilty, and if the state decides to allow withdrawal of the plea he will plead anew to all of the original indictments, or (2) if the state court decides that there should be specific performance of the agreement on the plea, then Culbreath should be resentenced by a different judge. *Santobello*, 404 U.S. p. 263, 92 S.Ct. 495, 30 L.Ed.2d 427.

---

10. See proposed amendments of Criminal Rules relating to plea negotiations and acceptance or rejection of plea agreements. 52 F.R.D. 409, 415 (1971).