**UNITED STATES of America, Appellee,**

v.

**Robert Nathaniel BROWN, Appellant.**

**No. 73–2046.**

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1974.

Decided July 18, 1974.

Haynsworth, Chief Judge, dissented and filed an opinion.

John F. Kelly, Landover, Md. [Court-appointed counsel], for appellant.

Russell T. Baker, Asst. U. S. Atty. (George Beall, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Indicted by a grand jury for forgery and possession of stolen mail matter in violation of 18 U.S.C. §§ 495 and 1708, Robert Nathaniel Brown initially pleaded not guilty to both counts. Thereafter, he entered into a plea bargain whereby he pleaded guilty to the charge of possession in consideration of dismissal of the charge of forgery and a recommendation by the government that he received a sentence of three years to be served at Lorton concurrently with the unexpired portion of a sentence to be served after revocation of parole. He was, instead, sentenced to a term of four years without recommendation that it be served at Lorton.

Because we conclude that the plea bargain was not carried out by the office of the United States Attorney, we vacate the sentence and remand for defendant to be resentenced by another district judge.

I.

After the plea bargain was struck between defendant's attorney and the prosecutor, the defendant tendered a change of plea from not guilty to guilty on the charge of possession of stolen mail matter. Before accepting the change of plea at rearraignment, the district judge engaged in a thoroughgoing exploration of the voluntariness of defendant's guilty plea. The terms of the plea bargain were spread upon the record, and they provided that the prosecutor would recommend at sentencing (1) that the court sentence the defendant to a term not to exceed three years, (2) that the court make the sentence run concurrently with an outstanding sentence in the District of Columbia if parole was revoked there, as was expected, (3) that the court sentence the defendant to the District of Columbia's institution at Lorton, which would determine his eligibility for parole, (4) that the court continue bond pending preparation of the presentence report, and (5) that the forgery count would be *nol prossed*. After advising the defendant that the court was not bound by the prosecutor's sentencing recommendations and that the maximum sentence possible was two thousand dollars and/or five years in prison, the district judge heard evidence from the prosecutor and the defendant personally which apparently satisfied him that there was a "factual basis" for the guilty plea. *See* Rule 11, F.R.Cr.P. He then accepted the guilty plea and ordered a presentence report.

Approximately two months later, at sentencing, a different Assistant United States Attorney appeared for the United

States. At that time the following colloquy ensued:

PROSECUTOR: At this time, Your Honor, the Government calls for sentencing the case of the United States of America vs. Robert Nathaniel Brown, Criminal No. 73–0167.

THE COURT: Anything you wish to say, Mr. [prosecutor].

PROSECUTOR: Well, Your Honor, in light of the plea bargaining agreement, the Government at this time is recommending three years incarceration, and we also recommend that if possible the Defendant be incarcerated at the Lorton Reformatory in Virginia.

THE COURT: Why?

PROSECUTOR: Well, Your Honor, that was part of the plea bargaining.

THE COURT: Not because you believe in it?

PROSECUTOR: Well, Your Honor, I do have some problems with that, anyhow, but that is the way I understand it.

THE COURT: Anything else?

PROSECUTOR: Nothing further.

After defendant's attorney had presented his argument on sentencing and the defendant had exercised his right of allocution, the district court sentenced the defendant to four years' imprisonment, expressly declining to make the arrangements necessary for incarceration at the Lorton Reformatory.

## II.

■ Disposition of this case is governed by Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). As was recognized there, guilty pleas induced by a plea bargain may be accepted by a trial court and a sentence thereon imposed provided that certain substantive principles of fairness are observed and the necessary procedural protections are followed. One substantive safeguard to which a criminal defendant is always entitled is that when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, supra, 404 U.S. at 262, 92 S.Ct. at 499.

■ In the instant case, we believe that the government failed to keep its bargain. We have no occasion to consider the propriety of sentence, or recommendation as to sentence, as an element of a plea bargain, but it is manifest that the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a *recommendation* on sentencing. This could reasonably be expected to be the sound advice, expressed with some degree of advocacy, of a government officer familiar both with the defendant and with his record and cognizant of his public duty as a prosecutor for the United States.

Undoubtedly the district court had this understanding of the role of an Assistant United States Attorney at sentencing when he sought the prosecutor's recommendation. Certainly he was entirely correct in inquiring into the basis of the recommendation to aid him in the exercise of his sentencing discretion. Whether the prosecutor's halfheartedness in presenting the recommendation was a factor in the district court's imposing a sentence more severe than that "recommended" is a matter into which we need not inquire. In *Santobello*, where one prosecutor had promised not to make a sentencing recommendation at the time of plea bargaining and then another prosecutor had called for the maximum punishment at the time of sentencing, there was a strong, unequivocal statement by the trial judge that his sentence was not affected in any way by the prosecutor's recommendation but rather was based on a highly adverse presentence report, parts of which he read into the record. Stating that they had "no reason to doubt" the trial judge's statement "that the prosecutor's recommendation did not influence him,"

the Court nonetheless reversed and remanded, "emphasiz[ing] that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." 404 U.S. at 262–263, 92 S.Ct. at 499. The question of the effect on the district court of the prosecutor's non-compliance with the plea bargain was thus deemed irrelevant. The sentence was vacated and the case remanded in the "interests of justice" and in order to enforce "the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." 404 U.S. at 262, 92 S.Ct. at 499.

In determining the significance of the prosecutor's failure to fulfill the promise contained in the plea bargain in *Santobello*, the Supreme Court did not inquire into the reasons for the breach; nor do we. We have no reason to think that the bargain was breached as a result of anything more than the failure of the first prosecutor to inform the second, and the second's complete candor in responding to the inquiry of the district court. But in *Santobello*, hinging reversal on the breach of the agreement alone, the Court attached no weight to the fact that the failure to comply with the plea bargain had been inadvertent.

> The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of agreement was inadvertent does not lessen its impact. 404 U.S. at 262, 92 S.Ct. at 499.

The test established to be applied by us is thus an objective one—whether the plea bargain agreement has been breached or not—irrespective of prosecutorial motivations or justifications for the failure in performance. We hold that it was. It is true that defense counsel in colloquy with the court purported to present the reasons why defendant's term should not exceed three years, why he should be confined at Lorton, and why the sentence should be a concurrent one; but, unlike our dissenting brother, we do not think that the statements of defense counsel constituted performance of the agreement by the government. The government effectively undercut the agreement before defense counsel even began to speak.

### III.

Having concluded that the plea bargain in the immediate case was breached, we would ordinarily be brought to the question of the appropriate relief on remand. On *certiorari* from the New York courts, the defendant in *Santobello* sought an order from the Supreme Court vacating his sentence and allowing him to withdraw his guilty plea so that he might proceed to trial. Though vacating the sentence, the Supreme Court, over sharp dissent, remanded the case to the state courts to permit them to choose whether there should

> only . . . be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i. e., the opportunity to withdraw his plea of guilty. 404 U.S. at 263, 92 S.Ct. at 499.

*See also* Culbreath v. Rundle, 466 F.2d 730 (3 Cir. 1972).

In the instant case, defendant does not seek to withdraw his guilty plea but only asks the lesser relief of "specific performance" of the plea bargain. We thus have no need to consider a choice of remedies. In the light of defendant's position, we conclude that a remand for resentencing before a different district judge, after full compliance with the terms of the plea bargain, follows *a fortiori* from *Santobello*.

Reversed and remanded.

HAYNSWORTH, Chief Judge (dissenting):

Until oral argument, the principal point in this case was whether, the sentence having been greater than the recommendation, the defendant was entitled

to withdraw his guilty plea and go to a trial on a plea of not guilty as provided in the proposed amendment to Rule 11. See, *e. g.*, United States ex rel. Culbreath v. Rundle, 3 Cir., 466 F.2d 730–735; United States v. Gallington, 8 Cir., 488 F.2d 637. The point was aborted, however, when defense counsel announced at the oral hearing that he had received positive instructions from the defendant not to seek the right to withdraw his plea. All that remains, then, is an appraisal of the sentencing hearing to determine whether the Government recommended that a sentence of no more than three years be imposed to be served at Lorton in accordance with the plea bargain. Though no principle of law divides us, I am prompted to note my disagreement with the majority out of a sense of fairness to the trial judge and to the prosecutor.

At the hearing when the guilty plea was tendered, the Assistant United States Attorney who negotiated the bargain clearly, correctly, and without reservation stated what the bargain was. If, at the sentencing hearing, a different Assistant United States Attorney may be said to have been halfhearted in making the recommendation because of his inability to answer the judge's question as to why confinement should be in a facility of the District of Columbia, and his expression of some personal reservation about it, he was not required to stultify himself. If that were all, however, I would agree with the majority because the judge's question probably should have been anticipated and the Assistant present at the sentencing hearing should have been informed why the Assistant who negotiated the bargain agreed to recommend confinement at Lorton. All of this was fully developed at the sentencing hearing, however, after the colloquy quoted by the majority.

After the prosecutor's recommendation, the Court was reminded that the bargain had been negotiated by another Assistant United States Attorney, and it was informed in detail why confinement at Lorton had been included as a part of the bargain. First, Lorton was not too far removed from the defendant's home in the District of Columbia. However, this thirty-seven-year-old man had no family, though it was said that if he were put on probation and the District of Columbia Parole Board did not revoke his parole, he would consider marriage. Second, he wished the District of Columbia Parole Board, alone, to have authority to release him conditionally, and, third, he wished a training program which was available at Lorton. The question which the Court first directed to the prosecutor, who was unable to answer it, was fully answered by defense counsel and the defendant, and the reasons for the bargain fully developed. They were considered by the District Judge and rejected because he was of the opinion that Lorton's training program was not superior to those available at federal institutions, and he was of the decided opinion that the general rehabilitation services of federal institutions were superior to those available at Lorton. It is true that the prosecutor never again spoke up. He did not say, "for the reasons now disclosed, I unreservedly recommend confinement at Lorton for no more than three years," but the reasons for the recommendations had been developed in a colloquy, largely with defense counsel, and rejected. Any such additional statement by the prosecutor would only have been argumentative.

In light of what transpired afterwards, I think the prosecutor's initial inability to answer the Court's inquiry about the recommendation of confinement at Lorton was not a failure of performance of the plea bargain. He knew what the bargain was; he stated the Government recommended its acceptance, and his inability to answer the Court's inquiry was cured when the reasons supporting the recommendation were fully developed later in the course of the sentencing hearing. Under the circumstances, I cannot conclude that there was a failure of performance of the Government's agreement.