**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony J. TURSI, Defendant-Appellant.**

**No. 77–1124.**

United States Court of Appeals,
First Circuit.

Submitted Feb. 6, 1978.

Decided May 30, 1978.

Joseph Beeler, Miami, Fla., and Neal R. Lewis, Miami, Fla., on brief, for defendant, appellant.

Julio Morales-Sanchez, U. S. Atty.; San Juan, P. R., Sidney M. Glazer, and Michael E. Moore, Attys., Dept. of Justice, Washington, D. C., on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This case involves the always difficult and delicate problem of plea bargaining. Defendant Anthony Tursi was sentenced on February 20, 1976, pursuant to a plea bargain in which the government agreed to drop two of three charges against him; the government made no promise of any recommendation concerning sentencing. Anthony Tursi's son, Philip, was a codefendant and was also sentenced pursuant to a plea bargain. The government agreed to recommend that Philip be sentenced as a youthful adult offender, 18 U.S.C. §§ 5005 *et seq.*, and to recommend a sentence of one year's probation. Both defendants pleaded guilty to knowing possession of 2,400 stolen blank

Eastern Airlines tickets, in violation of 18 U.S.C. § 659. The district court fined Anthony Tursi $5,000 and sentenced him to five years' imprisonment, to be served consecutively to a sentence of the Commonwealth of Puerto Rico. Philip Tursi was fined $5,000 and sentenced to imprisonment of one year and one day; he was not sentenced as a youthful adult offender.

On October 1, 1976, Anthony Tursi moved the district court to vacate his sentence pursuant to 28 U.S.C. § 2255. Following a hearing, the court denied the motion. This appeal followed. Three main issues are raised for our consideration. We address each separately.

### A.

■ The major contention pressed by Anthony Tursi is that his guilty plea was given in consideration for the promise that his son, Philip, would be put on probation. He points to the following colloquy to buttress his claim that his belief in such a promise finds record support:

THE COURT: Has any threat or promise been made to you to induce you to plead guilty?

ANTHONY TURSI: No, sir, none whatsoever.

THE COURT: Do you believe that there is any understanding—

ANTHONY TURSI: Except the promises that my son would go out on probation.

THE COURT: And that the U.S. Attorney would make some recommendation to the Court upon sentencing?

ANTHONY TURSI: Right, yes, that is more or less that is the extenuating circumstances that I am pleading guilty.

He urges us to find that he understood that the court was *bound* to release his son on probation and that his own guilty plea became involuntary when this "promise" was not kept. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

While the exchange quoted above might tend to support Anthony Tursi's contention that he thought he bargained for his son's probation by entering his own guilty plea, that exchange does not stand alone. The court, immediately following the above quoted exchange, inquired of defendant if anyone had made any predictions as to the sentence that the court would impose. Anthony Tursi answered, no. The court then repeated its admonition that the recommendation by the prosecution in no way was binding on the court. Immediately after accepting Anthony Tursi's guilty plea, the court addressed his son, Philip. Anthony Tursi was present throughout.

THE COURT: Has anyone made any predictions to you concerning the sentence that the Court will impose?

PHILIP TURSI: No, sir.

THE COURT: Defense counsel, have you made any predictions to the defendant in relation to sentence?

MR. DEL TORO: No, Your Honor.

.    .    .    .    .

THE COURT: I would like—the same as I did with your father—I would like to explain to you that any recommendations to be made by [the prosecution] in relation to sentence is not binding on the Court; that the Court may either accept or may reject it and may impose on you a sentence up to the maximum authorized by the statute under which you are being charged.

PHILIP TURSI: Yes, I am aware of that.

THE COURT: Do you realize that?

PHILIP TURSI: Yes.

THE COURT: And after having explained to you your Constitutional Rights . . . and the maximum penalties that may be imposed and the fact that the recommendation to be made by the U.S. Attorney is not binding on the Court and that the Court may impose on you any sentence up to the maximum authorized by the statute under which you are being charged, do you still wish to plead guilty to Count 3 of the indictment?

PHILIP TURSI: Yes, I do.

The court, by repeating at two different junctures that it might impose the maxi-

mum sentence authorized by statute, properly put both defendants on notice that the recommendation of probation for Philip Tursi might not be accepted by the court. At the sentencing hearing five months later, the court inquired of defendant, Anthony Tursi, whether, in view of the lapse of several months, he still wished to enter his guilty plea. Anthony responded affirmatively.

Plea bargaining is now accepted as a legitimate and necessary component of our criminal justice system. *Santobello, supra,* 404 U.S. at 261, 92 S.Ct. 495, *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). *But see* Note, *The Unconstitutionality of Plea Bargaining,* 83 Harv.L.Rev. 1387 (1970). So long as the plea is entered knowingly and voluntarily, it has been felt that the advantages which accrue to both prosecution and defendant outweigh its potential abuses. However, it has been recognized that there are special considerations attending a guilty plea offered in consideration of lenient treatment for a person *other* than the defendant. *See Kent v. United States,* 272 F.2d 795, 798 (1st Cir. 1959); ALI Model Code of Pre-Arraignment Procedure, Commentary to § 350.3(d), pp. 615–616 (1975). *Cf. Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Crow v. United States,* 397 F.2d 284, 285 (10th Cir. 1968); *Cortez v. United States,* 337 F.2d 699, 701–702 (9th Cir. 1964). Generally, the fear has been that there is greater danger of coercion in such a situation and that, accordingly, special care must be taken to ascertain the voluntariness of the guilty plea. In the case before us, the record discloses that Anthony Tursi expressed on various occasions genuine concern that his son, Philip, not serve time in prison. No doubt, this factored heavily in his decision to bargain with the prosecution and enter the guilty plea. Nevertheless, a thorough review of the record convinces us that Anthony Tursi was properly advised of the consequences of such a plea and was pointedly counseled that any recommendation made by the prosecution regarding Philip's sentence would in no way bind the court.

At the hearing on defendant's motion to vacate sentence, the prosecuting attorney and defense attorney both testified as to their understanding of the bargain. Each indicated that the understanding was that the government would *recommend* that Philip be given probation. The defense attorney testified that he had so informed Anthony; however, he did say that he had also told defendant that his own feeling was that the court would accept the government's recommendation regarding Philip.

We view as unfortunate the conjecture offered by defendant's attorney as to how the court might act on the government's recommendation. However, this personal opinion of the defense attorney cannot be reasonably construed as any sort of guarantee or promise. In open court, the judge queried Anthony Tursi if any predictions had been made concerning his sentence; he responded in the negative. The same question was asked of Philip, with the same response. The record adequately demonstrates that Anthony Tursi should have understood that the recommendation of probation was *not* a promise. He may have hoped that the court would follow the recommendation; however, there is sufficient record support to show that he could not reasonably have believed that he was *assured* of that result. *See Calabrese v. United States,* 507 F.2d 259, 260 (1st Cir. 1974).

*B.*

■ Defendant next asserts that his plea was involuntary because of the purported failure by the court to comply with certain requirements of Rule 11 of the Federal Rules of Criminal Procedure. He lodges three errors against the district court; first, that the court, though advising him of several rights he was waiving by entering a guilty plea and not proceeding to trial, did not specifically inform defendant that he was waiving his privilege against self-incrimination. Rule 11 as it was in force at

the time of entering the plea[1] did not prescribe any special advice to be given to the defendant regarding rights attending a criminal trial. The new Rule 11, which became effective December 1, 1975 (section (e)(6) of Rule 11, not at issue here, became effective on August 1, 1975), requires that the court inform the defendant of a number of his rights, including the privilege against self-incrimination. We think, in the context of the plea bargain in the instant case, that the rule enunciated in *United States v. Webb*, 433 F.2d 400 (1st Cir. 1970), *cert. denied*, 401 U.S. 958, 91 S.Ct. 986, 28 L.Ed.2d 242 (1971), is apt. There, we stated that a court need not "recite a ritualistic list of constitutional rights that are obviously being waived." *Id.* at 403. We emphasized that defendant did not allege that he did not know he was waiving the rights not cited by the court and that, due to the advice of counsel, it was proper to presume that he understood the rights he was waiving. Here, defendant does not claim to have been unaware of his privilege against self-incrimination; furthermore, he was assisted by counsel. Defendant is a sophisticated individual with one year's college education. For purposes of this issue, it must be noted that he is no novice to criminal proceedings. We draw a picture from all the circumstances of a defendant who presumptively knew of his privilege against self-incrimination. We have no cause to decide whether the warnings issued by the court would be sufficient under the present Rule 11. We hold only that, in the context of this case, the failure of the court to mention defendant's right against self-incrimination does not rise to the level of prejudicial error.

■ Defendant claims that since the court requested the prosecutor to outline the evidence against defendant and state the maximum sentence, the court failed to personally address defendant as required. There is no error here. *See United States v. Yazbeck*, 524 F.2d 641, 643 (1st Cir. 1975). The defendant was apprised in open court by the prosecutor of the charges and then asked by the judge if he understood and agreed with the prosecutor's statement. Defendant responded affirmatively.

■ Defendant also maintains that the court's statement that he had a right to a trial "before a judge or a jury" was incorrect. Defendant does not assert that he did not know that he had a right to a trial by jury if he so wished; indeed, he informed the district court judge that he preferred to be tried without a jury.

## C.

■ The third major ground defendant forwards as requiring vacation of the sentence is the failure of the prosecution to forcefully advocate the recommended sentence for Philip. He cites *United States v. Brown*, 500 F.2d 375 (4th Cir. 1974), as support for his position. *Brown* is distinguishable in that the prosecutor there failed to recommend that the sentence run concurrently as previously agreed and, when questioned by the court, indicated that he had problems concerning the plea bargain. This disclaimer by the government was found to "effectively undercut," *id.* at 378, the plea bargain. No such circumstances obtain here: the government did, in fact, recommend the sentence previously agreed upon and issued no equivocal comments regarding it. We conclude that the prosecution did not breach its plea bargain and that Anthony Tursi, after being properly advised by the court as to his rights and the probable consequences of his plea, knowingly and voluntarily pleaded guilty.

*The order is affirmed.*

---

1. The guilty plea was entered on September 8, 1975.