**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4325

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CLYDE WILLIAM PETERSON, a/k/a Clyde William Peterson, Jr.,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland at Greenbelt. Peter J. Messitte, Senior District Judge. (8:15-cr-00376-PJM-1)

Argued: May 9, 2019                                      Decided: July 31, 2019

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Eugene Victor Gorokhov, BURNHAM & GOROKHOV, PLLC, Washington, D.C., for Appellant. Gregory Douglas Bernstein, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Ziran Zhang, BURNHAM & GOROKHOV, PLLC, Washington, D.C., for Appellant. Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Clyde Peterson pleaded guilty, pursuant to a plea agreement, to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court sentenced Defendant to an above-Guidelines sentence of 83 months in prison.

On appeal, Defendant asserts that the government breached the plea agreement by recommending a sentence in excess of the agreed upon guideline range. We agree. Accordingly, we vacate Defendant's sentence and remand for resentencing.

I.

On the morning of June 9, 2015, two police officers observed two individuals sitting in a stolen Ford Mustang—one of two vehicles that had been reported stolen the previous day—in a parking lot near a bank in Upper Marlboro, Maryland. To apprehend the individuals, the officers used the police truck to block the driver's side of the stolen Mustang, exited the truck, and circled around the rear of the Mustang. Upon approaching the passenger side of the car, one of the officers saw the driver, Derrick Simmons, holding a gun, prompting the officer to begin firing into the vehicle. Several bullets struck Simmons and one of the bullets struck the passenger, Defendant, in the hand.

At the time they were apprehended, Defendant and Simmons wore gloves and two layers of clothing, notwithstanding that it was a hot day in June. The officers found a loaded Magnum .357 in Defendant's pocket. And the officers found the other stolen vehicle, a Ford Taurus, a short distance away.

Pursuant to a plea agreement dated June 6, 2016, Defendant agreed to plead guilty to one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). At the plea hearing, the prosecutor described the plea agreement to the district court, stating that Defendant was reserving the right to argue for a sentence below the agreed upon range under the advisory Sentencing Guidelines. The prosecutor further represented that the government agreed to recommend a "reasonable sentence." J.A. 196–97. After conducting the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure, the district court accepted Defendant's plea.

At sentencing, the Presentence Report calculated—and the parties agreed—that Defendant's Guidelines range was 57–71 months imprisonment. In a Sentencing Memorandum, Defendant asked the court to impose a sentence no greater than the upper end of his Guidelines range. In response, however, the government requested that the district court sentence Defendant to 108 months imprisonment—the same sentence that his co-defendant Simmons had received.

The government maintained that an upward variance was appropriate because of Defendant's criminal history and the circumstances surrounding his arrest. Specifically, the government emphasized that, at the time Defendant was found to be unlawfully possessing the firearm, he had just stolen two motor vehicles and appeared to be preparing to conduct an armed bank robbery. The government argued that an above-Guidelines variance was reasonable due to the seriousness of the crime, to promote respect for the law, and to provide adequate deterrence.

4

Before sentencing, Defendant's attorney filed a motion to withdraw representation, stating that Defendant had expressed concerns regarding his understanding of the plea agreement, thereby raising concerns as to whether counsel had adequately and effectively communicated the terms of the agreement to Defendant. The district court granted the withdrawal motion and appointed new counsel.

After obtaining new counsel, Defendant moved to withdraw his guilty plea, claiming that his plea was not knowing and voluntary because he did not understand the meaning of the provision committing the government to request a "reasonable sentence." Defendant claimed he understood that language to mean that the government would not recommend a sentence above the agreed-upon Guidelines range. Defendant further argued, in the alternative, that the government breached the plea agreement by requesting an above-Guidelines sentence. The district court denied Defendant relief.

Additionally, in his motion to withdraw and two separate supplemental sentencing memoranda, Defendant argued that in determining his sentence, the district court should consider the injury he suffered to his hand during his arrest as a mitigating factor. Defendant detailed the various surgeries he had undergone and the future possibility that his right index finger might have to be amputated. During a sentencing hearing on May 7, 2018, Defendant again asserted that the injury he suffered to his hand—and the allegedly poor medical treatment he received for that injury while incarcerated—constituted a mitigating factor warranting a sentence reduction.

At the conclusion of the hearing, the district court sentenced Defendant to 83 months' imprisonment—one year above the high end of the agreed-upon Guidelines

5

range. The district court concluded that the upward departure was warranted in light of the specific circumstances surrounding Defendant's offense, agreeing with the government that the circumstantial evidence indicated that Defendant and Simmons were preparing to commit armed robbery of the nearby bank. Because Defendant possessed the weapon "in connection with a crime that [was] about to be committed," it was "a more serious kind of felon in possession crime than otherwise," the court reasoned. J.A. 469. In explaining the sentence, the court also considered Defendant's previous convictions, his co-conspirator's 108-month sentence, his time at Chesapeake Detention Facility, and his devotion as a father. The court, however, did not address Defendant's argument that his hand injury warranted a sentence reduction.

Defendant timely appealed.

## II.

On appeal, Defendant argues that the government breached the plea agreement by recommending a sentence above the Guidelines range. Defendant further maintains that the district court erred in failing to expressly consider his argument that his hand injury constituted a mitigating factor warranting a lower sentence. We address each argument in turn.

## A.

Whether the government has breached a plea agreement is a question of law we review de novo. *United States v. Lopez*, 219 F.3d 343, 346 (4th Cir. 2000). A defendant alleging that the government has breached a plea agreement "bears the burden of

6

establishing that breach by a preponderance of the evidence." *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000).

When construing plea agreements, this Court "'draw[s] upon contract law as a guide to ensure that each party receives the benefit of the bargain,' and to that end, [this Court] 'enforce[s] a plea agreement's plain language in its ordinary sense.'" *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016) (quoting *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007)). As the Supreme Court has explained, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Furthermore, as this Court has noted, "[t]he Government, no less (and arguably more) than a private citizen, must be held to the agreements it enters into with its citizens." *Jordan*, 509 F.3d at 199 (citation omitted). Therefore, if a defendant has "failed to receive the benefit of his bargain," the government is in breach. *United States v. Peglera*, 33 F.3d 412, 415 (4th Cir. 1994). However, the government is only held "to those promises that it actually made to the defendant." *Id.* at 413.

"In determining what promises the government made, we read a plea agreement's plain language in its ordinary sense." *United States v. Tate*, 845 F.3d 571, 575 (4th Cir. 2017) (quotations omitted). As with contract law, a fundamental maxim in construing plea agreements is that the agreement should be "'interpreted as a whole.'" *United States v. Barefoot*, 754 F.3d 226, 246 (4th Cir. 2014) (quoting Restatement (Second) of Contracts § 202 (1981)). Likewise, courts should choose an interpretation "which gives

7

effect to all provisions of the contract," as opposed "to one which renders a portion of the writing superfluous, useless or inexplicable." *United States v. Holbrook*, 368 F.3d 415, 428 (4th Cir. 2004), *vacated on other grounds*, 545 U.S. 1125 (2005); *see also United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998). Additionally, "all ambiguities in the Plea Agreement are to be construed against the government as its drafter." *Barefoot*, 754 F.3d at 246.

Because plea agreements raise due process "concerns that differ fundamentally from and run wider than those of commercial contract law," *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986), when a defendant pleads guilty pursuant to a written agreement, the court should analyze the agreement with "greater scrutiny" than it would apply in analyzing a commercial contract, *Jordan*, 509 F.3d at 195–96 (citing *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997)). As a result, even "derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the Government of its primary responsibility for insuring precision in the agreement." *Harvey*, 791 F.2d at 301.

For several reasons, we conclude that the plea agreement was, at a minimum, ambiguous as to whether the parties agreed that the government would not recommend a sentence in excess of the agreed-upon Guidelines range. Most significantly, whereas the section of the plea agreement in which the parties stipulate to the advisory Guidelines range, Paragraph 6, expressly reserves to the Defendant the authority to argue for a below-Guidelines sentence, neither that Paragraph nor any other provision in the agreement expressly reserves to the government the authority to recommend an above-

8

Guidelines sentence. *See* J.A. 50–52 ("The Defendant reserves the right to argue for any factor under 18 U.S.C. § 3553(a) that could take the sentence outside of the advisory guidelines range and will notify the Court, the United States Probation Officer and opposing counsel at least ten days in advance of the sentencing of the facts or issues they intend to raise.").

Because a defendant's and the government's authority to depart from requesting a sentence within the Guidelines range are naturally "understood to go hand in hand," the plea agreement's reservation of such authority to *only* Defendant provides strong evidence that the plea agreement did not confer on the government the right to argue for an above-Guidelines sentence. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) (noting that the *expressio unius* canon of construction "properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference" (quoting E. Crawford, Construction of Statutes 337 (1940)); *see also, e.g.*, *Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C.*, 609 S.E.2d 49, 56 (Va. 2005) (Agee, J.) ("[U]nder the principle of *expressio unius est exclusio alterius*, the omission of a particular covenant or term from a contract reduced to writing shows an intent to exclude it."); *Wise Cnty. Bd. of Sup'rs v. Wilson*, 463 S.E.2d 650, 652 (Va. 1995) (Keenan, J.) ("[T]he maxim *expressio unius est exclusio alterius* . . . . provides that, when a [written instrument] mentions specific terms, an implication arises that items not present were not intended to be included within the scope of the [written instrument].").

9

That the plea agreement expressly requires Defendant to provide advance notice of the "facts or issues" supporting a below-Guidelines sentence if he intended to request such a sentence, J.A. 50, further indicates that the agreement did not reserve to the government the authority to argue for an above-Guidelines sentence. Put simply, if the government had reserved such authority, one would expect the agreement to include a similar provision obliging the government to provide advance notice of the "facts and issues" supporting an above-Guidelines sentence. Yet the agreement includes no such provision.

Nonetheless, the government appears to have been prepared to go to the sentencing hearing and argue for an above-Guidelines sentence without notice to either Defendant or the district court. In fact, the only notice Defendant received of the government's intention to argue outside the Guidelines range came in the government's response brief to Defendant's own sentencing memorandum, which Defendant filed after he learned that the government had argued for an above-Guidelines sentence in his co-defendant Simmons's case. We decline to interpret the agreement in a manner that would require the Defendant to provide notice to the government when arguing outside the Guidelines range but would not require the government to do the same to Defendant. Such a result would be so fundamentally unfair as to be "inexplicable." *Holbrook*, 368 F.3d at 428 (citation omitted).

Other sections of the plea agreement demonstrate that when the parties intended to confer a particular right or obligation on both parties, they expressly did so. For instance, Paragraph 8 states that "*[t]he parties reserve* the right to bring to the Court's attention at

the time of sentencing . . . all relevant information concerning the Defendant's background, character and conduct[.]" J.A. 51 (emphasis added). Likewise, in Paragraph 11(b), "*[t]he Defendant and this Office* knowingly waive all right . . . to appeal whatever sentence is imposed." *Id.* (emphasis added). By contrast, the plea agreement expressly reserved to *only* "the Defendant" the right to argue for a non-Guidelines-range sentence, notwithstanding that the other sentence in that subparagraph imposes obligations on both "[t]his Office and the Defendant." J.A. 50.

The government contends that Paragraph 7 of the agreement, which obligates the government to "recommend a reasonable sentence," conferred on the government the authority to request an above-Guidelines sentence so long as such a sentence is "reasonable."[1] J.A. 51. But Paragraph 12 of the plea agreement, which discusses the consequences of Defendant engaging in specified types of misconduct, undermines the government's claim that Paragraph 7 confers on the government the authority to recommend an above-Guidelines sentence.

Paragraph 12 provides that in the event that Defendant engaged in a specified form of misconduct, the government is authorized "to make sentencing recommendations other than those set out in this agreement." J.A. 52. If, as the government claims, Paragraph 7 endows the government with the authority to recommend *any* "reasonable" sentence, which the government stated at oral argument could be up to the statutory maximum,

---

[1] Notably, counsel for the government represented that he did not, as a matter of course, argue for "reasonable" sentences above the Guidelines range. Indeed, he stated that he had never done so until this case. Oral Argument at 44:18–30.

11

then Paragraph 12 would confer no additional authority on the government in the event of a breach by Defendant because the rules of prosecutorial ethics and federal law prohibit the government from recommending—and a district court from imposing—an unreasonable sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Moreover, notwithstanding that the manifest purpose of Paragraph 12 is to deter post-plea misconduct by Defendant, the government's construction would not advance that purpose because Defendant would face no additional consequence for engaging in misconduct. If the government's interpretation of "reasonable sentence" is correct and could include any sentence up to the statutory maximum, regardless of the agreed-upon Guidelines range, then the government has promised nothing to Defendant that could change as a result of Defendant's misconduct. As a result, Paragraph 12 would be meaningless. But canons of construction counsel that we reject any construction of the plea agreement that would render Paragraph 12 "superfluous, useless or inexplicable." *Holbrook*, 368 F.3d at 428 (citation omitted).

Given the other aspects of the plea agreement indicating that the government did not reserve the right to recommend an above-Guidelines sentence, Paragraph 7 renders the plea agreement, at most, ambiguous on that point. In the face of such ambiguity, we construe the agreement against the government as drafter. *Barefoot*, 754 F.3d at 246.

Additionally, when a plea agreement is ambiguous, courts have turned to evidence outside of the four corners of the agreement to resolve the ambiguity. *See Harvey*, 791 F.2d at 302 (concluding that a plea agreement was ambiguous and examining other evidence in the record to determine whether the government could prosecute the same

defendant for related criminal conduct in another federal district).  Here, Defendant introduced several contemporaneous plea agreements drafted by the same United States Attorney's Office, which expressly reserve to both parties the right to request a non-Guidelines-range sentence. *See, e.g.*, J.A. 329, ¶ 9 ("This Office and the Defendant agree that *both parties reserve the right* to argue that this Court should sentence the Defendant to a variant sentence outside of the advisory guideline range determined by the Court." (emphasis added));  J.A. 330, ¶ 9 ("*Either party* will be free to argue for a variance sentence under 18 U.S.C. § 3353(a), but must notify the Court, the United States Probation Office, and this Office, in writing, at least fourteen days in advance of the sentencing of the facts and issues the party intends to raise in connection with any such argument." (emphasis added)); J.A. 331, ¶ 8 ("*Both parties reserve the right* to argue for a sentence outside of the advisory guidelines range, and will notify the Court, the United States Probation Officer, and government counsel at least fourteen days in advance of sentencing of the facts or issues they intend to raise." (emphasis added)); J.A. 332, ¶ 8 ("*This Office and the Defendant each reserve the right* to argue for a sentence outside of the advisory guidelines range, and will notify the Court, the United States Probation Officer, and each other at least 14 days in advance of sentencing of the facts or issues this Office or the Defendant intends to raise." (emphasis added)).

These agreements demonstrate that the government—and this U.S. Attorney's Office, in particular—knew how to draft language expressly reserving its right to argue

13

outside the Guidelines range.[2]  That *this plea agreement* does not include such language provides further evidence that the government did not negotiate the right to recommend an above-Guidelines sentence.

Because the government argued for a sentence of 108 months, well above the Guidelines range of 57–71 months, we conclude that the government breached the plea agreement.  Consistent with our precedent, when the government commits such a breach, the sentence "is vacated and th[e] case remanded to a different district judge for resentencing."  *Peglera*, 33 F.3d at 415; *see also United States v. Brown*, 500 F.2d 375, 378 (4th Cir. 1974).  Resentencing must occur, regardless of whether the government's recommendation had any effect on the district judge's ultimate sentencing decision.  *See Santobello*, 404 U.S. at 262 (remanding despite the district judge stating "that the prosecutor's recommendation did not influence him").  At resentencing, Defendant should receive the benefit of his bargain—a sentence recommendation from the government that does not go above the Guidelines range.

---

[2] At oral argument, counsel for the government explained that prior to *Gall*, the form plea agreements for this U.S. Attorney's Office restricted the government to arguing for a sentence within the Guidelines range unless the government specified that it would be seeking a sentence outside that range.  However, following *Gall*, the government removed this language from the form agreements and replaced it with the "reasonable sentence" language found in Paragraph 7.  Oral Argument at 34:13–51.  This change appears to have injected some ambiguity into the government's bargaining position, resulting in a potential trap for unwary defendants.  However, regardless of whether the ambiguity was accidental or intentionally created by the government to strengthen its bargaining position, we resolve it against the government and in favor of Defendant.  *See Barefoot*, 754 F.3d at 246.

B.

Defendant also maintains that the district court procedurally erred in failing to address his argument that his hand injury warranted a lower sentence. Again, we agree.

This Court reviews the procedural reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. In determining procedural reasonableness, we assess "whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019), *petition for cert. docketed* (U.S. June 13, 2019) (No. 18-9654).

When imposing a sentence, a district court must place on the record "an 'individualized assessment' based on the particular facts," *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (quoting *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010)), demonstrating it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority," *Rita v. United States*, 551 U.S. 338, 356 (2007). Although we do not require the district court to "robotically tick through § 3553(a)'s every subsection," *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006), the district court "must address or consider all non-frivolous reasons for imposing a different sentence and explain why he has rejected those arguments." *Ross*, 912 F.3d at 744. The district court must set forth its explanation for rejecting a non-frivolous argument for a lesser sentence in "a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *Blue*, 877 F.3d at 519.

15

The length and scope of the trial court's explanation is not subject to a bright line rule. *See id.* at 518. But even though "[t]here is no mechanical approach to our sentencing review," this Court must be satisfied that the district court properly considered the defendant's arguments. *Id.* To that end, this Court has set aside a defendant's sentence as procedurally unreasonable when a district court failed to meaningfully consider any non-frivolous argument by the defendant for a shorter sentence. *See Ross*, 912 F.3d at 745 (holding that the trial court abused its discretion in failing to address the defendant's non-frivolous argument that his mental health issues caused him to exhibit a lack of remorse); *Blue*, 877 F.3d at 519–20 (holding that the district court abused its discretion by failing to address six of the defendant's eight non-frivolous sentencing arguments, including his new employment and his co-defendant's shorter sentence); *Lynn*, 592 F.3d at 584–85 (holding that the district court abused its discretion in imposing above-Guidelines sentence when the district court failed to address the defendant's non-frivolous arguments that his criminal history and the circumstances of his offense did not justify such a sentence).

In the present case, Defendant argued on several occasions that the injuries he suffered to his hand while being apprehended warranted imposition of a shorter sentence. Defendant introduced medical records establishing the severity of his hand injury. Defendant's sentencing memoranda and arguments also cited two out-of-circuit cases supporting the proposition that an injury caused by police could be considered a "continuing punishment" that can be considered as a mitigating factor at sentencing. *See United States v. Clough*, 360 F.3d 967, 970 (9th Cir. 2004) ("We . . . recognize that it is

16

theoretically possible that being shot by law enforcement personnel can constitute punishment, thus allowing a court to fashion a reduced sentence."); *United States v. Williamson*, No. ED–CR–13–00021–JLQ, 2013 WL 4677838 at *2 (C.D. Cal. Aug. 29, 2013) (imposing a lower sentence because the defendant suffered severe and unexplained injuries during his arrest).

Although neither this Court nor any district court in this circuit appears to have identified injuries a defendant suffered while being apprehended as a mitigating factor for purposes of sentencing, the out-of-circuit authorities cited by Defendant to the district court establish that the argument was not frivolous. Additionally, the Sentencing Commission has not specifically proscribed the argument, further indicating it was not frivolous. *See Koon v. United States*, 518 U.S. 81, 83 (1996) ("A court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, that factor's consideration.").[3] Notwithstanding that Defendant raised his non-frivolous mitigation argument related to his hand injury in briefing and at oral argument, the district court failed to address the argument. Although it gave a lengthy explanation for why it ordered a sentence in excess of the Guidelines range, focusing on the specific circumstances of the crime, it made no mention of Defendant's hand injury.

---

[3] Although we need not—and thus do not—decide the issue, Defendant's arguments based on his hand injury also may be cognizable under Section 5H1.4 of the Guidelines, which identifies an "extraordinary physical impairment" as grounds for a downward departure.

17

The government argues that the trial court's discussion of a *different* mitigation argument raised by Defendant—the conditions of his incarceration at Chesapeake Detention Facility—implicitly addressed Defendant's argument that his hand injury warranted a shorter sentence. To be sure, at times Defendant tied together his hand injury argument with his assertion that the allegedly harsh conditions of confinement at the Chesapeake facility—including the allegedly inadequate medical care for his hand injury—constituted grounds for reducing his sentence. But the court's statements at the sentencing hearing indicate it did not consider Defendant's hand injury argument as part of the court's discussion of the conditions of confinement at the Chesapeake facility. In rejecting the conditions of confinement argument, the court explained that the conditions at the facility did not warrant imposition of a shorter sentence because "[e]verybody is in the same boat there." J.A. 475–76. But not "everybody" at the facility required medical treatment for a hand injury akin to that suffered by Defendant as part of his apprehension, meaning that the district court's "same boat" reasoning could not have applied to Defendant's hand injury argument.

Additionally, Defendant's hand injury argument was not limited to the allegedly inadequate medical treatment at the Chesapeake facility. Rather, the gravamen of Defendant's argument is that the injury he suffered to his hand during his apprehension amounts to a "*life-long*" "punishment" that should be treated as a mitigating factor weighing against "additional punishment" in the form of a longer term of incarceration. J.A. 455–56 (emphasis added). Because Defendant's hand injury argument was not limited to his treatment at the Chesapeake facility, the district court's discussion of

18

Defendant's treatment at the Chesapeake facility could not have effectively disposed of that argument.

Although our review of a district court's sentencing explanation is deferential, "[w]e cannot assume that a sentencing court truly considered a defendant's nonfrivolous arguments or his individual characteristics when the record fails to make it 'patently obvious.'" *Blue*, 877 F.3d at 521 (quoting *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006)). We cannot say that it is "patently obvious" that the district court considered Defendant's non-frivolous hand injury argument.

Once an abuse of discretion is found, we typically analyze whether the error was harmless. *Lynn*, 592 F.3d at 576. But because this case is already being remanded on other grounds, *see supra* Part II.A, we need not inquire into whether this error was harmless. Rather, we leave it to the district court to address Defendant's hand injury argument—and any other non-frivolous mitigation argument raised by Defendant— during resentencing.

### III.

In sum, we hold that the government breached its plea agreement with Defendant when it recommended an above-Guidelines-range sentence. We further conclude that the district court abused its discretion in failing to address a non-frivolous mitigation argument repeatedly raised by Defendant.

Accordingly, Defendant's sentence "is vacated and th[e] case remanded to a different district judge for resentencing." *Peglera*, 33 F.3d at 415; *see also Brown*, 500 F.2d at 378.

19

*VACATED AND REMANDED*