USA v. Giovanella, Jr.                    CR-92-87-B      08/16/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                        Criminal No.  92-087-B

Albert L. Giovanella, Jr.


**O R D E R**


    The defendant, Albert L. Giovanella, Jr., has been charged in an eleven count indictment with wire fraud, bank fraud, conspiracy, money laundering, engaging in a monetary transaction involving criminally derived proceeds, and the use of false documents to avoid student loan payments.  The defendant was arraigned on July 6, 1993 and pleaded guilty to one count of wire fraud pursuant to a plea agreement reached with the government.  Because the defendant had taken prescription medications shortly before his plea, I deferred a decision on whether to accept the plea until I could receive and consider medical evidence concerning the effect of the medications on his ability to knowingly, voluntarily, and competently plead guilty.  For the reasons that follow, I now find that the defendant is competent and that his plea of guilty was knowingly and voluntarily made.

## DISCUSSION

The facts of this case raise several difficult issues that bear on the defendant's competence and his ability to knowingly and voluntarily plead guilty. The defendant has a serious medical condition, and he has a history of psychiatric problems; he took several potent medications prior to the entry of his guilty plea; he made statements at various points during the plea hearing that raise questions concerning his understanding of the charges against him and the consequences of his decision to plead guilty; and he expressed concern at the plea hearing that he was under pressure to plead guilty to help his son and other members of his family.

In considering the many issues presented by the defendant's proposed plea, I begin by discussing the general principles that must guide my analysis. I then turn to the specific issues presented by this case.

A.  The Legal Standards

The legal standard used to determine whether a defendant is competent to plead guilty is the same as the standard used to determine a defendant's competency to stand trial. Godinez v. Moran, 113 S. Ct. 2680, 2684-88 (1993). In determining a defendant's competency, the question that must be answered is

"whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Id. at 2685 (quoting Dusky v. United States, 3620 U.S. 402 (1960)).

Competency alone is not enough to permit a defendant to plead guilty. In addition, the defendant's decision must be knowing and voluntary. Henderson v. Morgan, 426 U.S. 637, 645 (1976); McCarthy v. United States, 394 U.S. 459, 467 (1969). Whereas competency depends upon a defendant's capacity to understand and assist, voluntariness requires actual understanding. Godinez, 113 S. Ct. at 2687 n.12. Thus, a defendant must understand the essential elements of the offense to which he is pleading guilty and the relationship of the material facts to the offense. McCarthy, 394 U.S. at 466-67. Equally important, the defendant must understand both the constitutional rights he waives by pleading guilty, Boykin v. Alabama, 395 U.S. 238, 243-44 (1969), and the potential sentence he faces as a result of his guilty plea. Mabry v. Johnson, 467 U.S. 504, 510 (1984). Finally, the defendant's decision must not have been induced by threats or improper promises. Mabry, 467 U.S. at 509-10; Machibroad v. United States, 368 U.S. 487, 492

3

(1962).

    B.    <u>Defendant's Physical Condition and</u>
                   <u>Psychiatric History</u>

The defendant suffers from post-polio syndrome. This condition develops twenty-five to thirty-five years after the onset of polio and manifests itself by weakness in the muscles in areas previously affected by the polio. In the defendant's case, the condition has impaired his ability to breathe for prolonged periods without the support of a ventilator.

The defendant also has a significant history of psychiatric illness. At one time he apparently suffered from Bipolar Disorder. However, after a 1992 examination, the defendant's psychiatrist determined that the defendant instead suffered from adjustment disorder with anxiety. The defendant has received electroconvulsive treatment in the past, and he has taken anti-anxiety and anti-depressant medications for a prolonged period. He also has a history of suicide attempts.

The defendant initially attempted to have his trial indefinitely postponed because he claimed that the post-polio syndrome and his psychiatric condition were so serious that he could not withstand the rigors of trial. After an evidentiary hearing, I concluded that although the defendant was seriously ill, his conditions would not prevent him from participating in a

4

trial if proper safeguards were followed.

Notwithstanding this finding, the defendant failed to appear at his arraignment because he developed an episode of respiratory distress on the way to the courthouse that he now claims was caused by an anxiety attack.[1]  In light of the defendant's behavior, I ordered that the defendant be examined to determine whether his apparent anxiety attacks, together with his delicate physical condition, rendered him intermittently incompetent to stand trial.

The psychiatric evaluation conducted by the staff at the Federal Medical Center was extremely thorough.  After reviewing the defendant's prior medical and psychiatric history, the results of numerous psychological tests, and after a lengthy interview, the reviewing psychologist, Dr. Thomas Kurcharski, concluded that the defendant was competent to stand trial.  He also determined that: (i) the defendant "has a substantial characterological disorder with very histrionic, narcissistic, borderline and antisocial features"; (ii) the results of psychological testing indicate that the defendant is feigning or

---

[1]The defendant had previously experienced a similar episode when he was brought to the Federal District Court for the District of Massachusetts to respond to criminal charges that were pending against him in that district.

exaggerating his medical and psychiatric difficulties; and (iii) the defendant is able to control the anxiety he appears to experience when confronted with stressful situations. In summary, Dr. Kucharski's report provides compelling evidence that neither the defendant's serious illness nor his psychiatric history adversely affect his competence to stand trial or his ability to knowingly and voluntarily plead guilty.

C. Defendant's Use of Prescription Medications

At the plea hearing, the defendant disclosed that he had recently taken several potent prescription medications at the direction of his physician. These medications include the anti-anxiety drug, Xanax, the anti-depressant, Prozac, and the hypnotic, Halcion. When, as in the present case, a defendant has taken prescription medications prior to a plea hearing that could significantly affect his cognitive functioning, it is imperative that expert testimony be considered to evaluate the likely effect of the medications on the defendant's ability to competently and voluntarily plead guilty. See United States v. Parra-IBonez, 936 F.2d 588, 594-96 (1st Cir. 1991). Consequently, I directed the court reporter to prepare a transcript of the plea hearing and instructed the parties to obtain affidavits from qualified medical personnel concerning the affect of the medications on the

6

defendant's ability to competently and voluntarily plead guilty.

In response to my order, the defendant obtained affidavits from his treating physician, Dr. Douglas Johnson, and a psychiatrist who had formerly treated him, Dr. Clifford Askinazi. The government obtained an affidavit from Dr. Bartolome Celli, the defendant's former pulmonologist. All three physicians acknowledge that the medications the defendant took, especially in combination, could cause drowsiness or even induce stupor in a patient who was not accustomed to taking the medications. However, Dr. Askinazi and Dr. Celli noted that these effects would likely be less pronounced in a patient such as the defendant who had been taking the medications for some time. Most importantly, all three physicians agreed after reviewing the transcript of the plea hearing that the medications the defendant took did not prevent him from being able to consult with his attorneys, participate meaningfully in the proceedings, or plead guilty with an understanding of the charges against him and the consequences of his decision.

My own observations of the defendant at the plea hearing are consistent with the opinions of the three physicians. Although the defendant claimed that the medications had dulled his thinking and had caused him to become sleepy and weak, his

7

cognitive abilities did not appear to have been significantly affected. As the record indicates, the defendant was an active participant throughout the hearing. Although he had his eyes closed for a brief period, the defendant remained responsive and appeared to be following the proceedings closely. On several occasions, he interjected to correct a misstatement made by someone else. He frequently asked me to explain things that he did not understand, and he was quick to clarify his responses to my questions to ensure that he said nothing that might further implicate his son. In short, while the medications undoubtedly helped him to deal with the stress and anxiety of the hearing, I find that they did not render him incompetent or prevent him from voluntarily and knowingly pleading guilty.[2]

D.    The Defendant's Understanding of the Charge and
      the Consequences of his Decision to Plead Guilty

Several of the responses the defendant gave to my questions at the plea hearing raised questions concerning his understanding of the trial process. Particularly at the beginning of the

---

[2]I also note that an emergency medical technician ("EMT") and a respiratory therapist attended the hearing and closely monitored the defendant's condition in order to assist me in ensuring that he was at all times able to participate meaningfully in the plea hearing. At no point did either the EMT or the respiratory therapist indicate that the defendant was having any difficult in meaningfully participating.

hearing, the defendant seemed not to understand certain basic matters such as the right to a trial by jury and the burden of proof.  Moreover, rather than responding directly to my questions, the defendant seemed more interested in discussing various other matters such as his feelings of guilt over the harm that his criminal conduct had caused to his family, his desire to avoid a trial, and his interest in seeing that I and the government were made aware of the fact that others had escaped prosecution for their involvement in his criminal scheme.

There was a marked difference in the character of the defendant's responses during the second part of the hearing, however.  When I questioned the defendant on the elements of the offense to which he was pleading guilty and the facts pertaining to the offense, it was obvious from his answers that he understood the charge.  It was also apparent that the defendant understood the consequences of his decision to plead guilty.  He expressed an understanding of the specific constitutional rights that he was surrendering by pleading guilty, and he understood the maximum penalty he faced as a result of his decision.  Moreover, he also claimed to understand that no one could predict the length of his sentence and that it was my duty to sentence him after considering the presentence report and the applicable

9

sentencing guidelines. Accordingly, I am convinced that the defendant understood the charge to which he pleaded guilty and the consequences of his decision.

E. Threats or Improper Promises

The final issue presented by the defendant's proposed plea is whether the plea was induced by threats or improper promises. During the plea hearing, the defendant repeatedly complained that the government had improperly threatened to bring criminal charges against innocent members of his family. He also feared that the government would not support a sentence reduction motion for his son unless he pleaded guilty. As a result, the defendant refused to sign the plea agreement because the agreement provided that it had been reached "without promise of benefit of any kind (other than concessions contained in the plea agreement), and without threats, force, intimidation, or coercion of any kind."

A guilty plea is not involuntary simply because it is induced in part by the government's promise to exercise leniency in dealing with a person other than the defendant. United States v. Tursi, 576 F.2d 396, 398 (1st Cir. 1978); United States v. Marquez, 909 F.2d 738, 741-42 (2d Cir. 1990), cert. denied, 498 U.S. 1084 (1991). However, under such circumstances, special care must be exercised to ensure that a guilty plea is truly

10

voluntary.  Tursi, 576 F.2d at 398.

In the present case, the defendant's decision to plead guilty was undeniably motivated in part by guilt stemming from his son's conviction and a hope that pleading guilty might somehow benefit his son and the rest of his family. Nevertheless, this is not a case where such concerns require me to reject the defendant's guilty plea.  First, no evidence has been presented to suggest that the government engaged in any improper threats or promises in an attempt to induce the defendant to plead guilty.  Although the government has apparently agreed to support a request by the defendant's son to reduce his sentence in exchange for the son's agreement to testify against his father, the government readily acknowledges that the defendant's decision to plead guilty will not affect its agreement with the defendant's son.  Similarly, no evidence has been presented to suggest that the government has threatened to bring criminal charges against members of the defendant's family if he refuses to plead guilty.  To the contrary, the only evidence in the record on this point is the government's statement that it has no present intention of bringing charges against members of the defendant's family regardless of whether the defendant pleads guilty.  Thus, this is hardly a case where

11

the government has inappropriately attempted to induce a defendant's guilty plea through threats or improper promises.

Second, this is not a case where there is a danger that an innocent man might have been induced to plead guilty to an offense he did not commit in order to obtain leniency for a family member. As the defendant himself admits, the evidence of his guilt is overwhelming and it is a virtual certainty that he would have been convicted if this case had gone to trial.

Finally, notwithstanding the defendant's understandable effort to characterize his decision to plead guilty as a selfless act to protect the family he loves, the reality is that the defendant is the only person who stands to benefit from his decision to plead guilty. The defendant's recognition of this fact is evidenced by his persistence in his decision even after he was informed that his guilty plea would have no affect on his son or the rest of his family. In summary, I find that the defendant's decision to plead guilty was not induced by any threats or improper promises from the government.[3]

---

[3]The defendant also complained that his family was pressuring him into accepting the plea. However, "[u]navoidable influence or pressure from sources such as . . . friends or family does not make a plea involuntary . . . ." Stand v. Dugger, 921 F.2d 1125, 1142 (11th Cir. 1991), cert. denied, sub nom. Stano v. Singletary, 112 S. Ct. 116 (1991).

12

## CONCLUSION

I find that the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that he has a rational as well as factual understanding of the proceedings against him. Accordingly, I find that he is competent.

I also find that the defendant understands the offense with which he was charged, the potential sentence he faces, and the constitutional rights he has waived. Finally, I find that the defendant's plea was not coerced and that it was free from any improper threats or promises. Accordingly, I find that the defendant's guilty plea was knowingly, voluntarily, and intelligently made.

The defendant's plea of guilty is accordingly accepted and he is hereby adjudged guilty of the offense to which he has pleaded guilty.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 16, 1993

13

cc:   Mark Larsen, Esq.
      Kenneth Glidden, Esq.
      United States Attorney
      United States Marshal
      United States Probation